H. B. McCALLA, Plaintiff-in-Error, v. LAWRENCE E. NELSON, Defendant-in-Error. —313 S. W. (2d) 462.

Western Section. December 20, 1956.

Rehearing Denied January 30, 1957.

Certiorari denied by Supreme Court July 29, 1957.

162

Margaret Spann, Memphis, for plaintiff in error.

Nelson, Norvell & Floyd and John E. McKee, Memphis, for defendant in error.

AVERY, P. J. (W. S.) This case arose in the General Sessions Court of Shelby County, Tennessee, on the usual General Sessions warrant in which Lawrence E. Nelson, the original plaintiff, brought suit against H. B. McCalla, the original defendant, for $459.68 damages to the Nelson automobile growing out of a collision of the automobiles of plaintiff and defendant as hereinafter set out.

In that Court there was a judgment for the full amount of $459.68 sought to be recovered. The defendant, H. B. McCalla, perfected an appeal to the Circuit Court of Shelby County upon the oath prescribed for poor persons (R. 5). In said Circuit Court there was an answer and cross-summons filed by the original defendant. In the action brought by the cross-summons, McCalla executed a cost bond with his counsel as surety. (R. 6) In the Circuit Court the whole matter was tried at one and the same time in Division Five before the Honorable Greenfield Polk, Judge, and a jury. There was a verdict by the jury in the following words:

"We the jury find for the plaintiff in the case of Nelson v. McCalla and assess damages in the amount of $459.68, A. E. Hohenberg, Foreman. We the jury find for the defendant in the case of McCalla v. Nelson, A. E. Hohenberg, Foreman". (R. 19)

There was a judgment pronounced on this verdict in the following words:

"It Is Therefore Ordered by the Court that plaintiff have and recover of the defendant H. B. McCalla and surety Margaret Spann the sum of Four Hundred Fifty nine and 68/100 ($459.68) Dollars and all costs herein accrued for which let execution issue." (R. 19)

Motion for new trial was seasonably made by McCalla, overruled by the Court, exceptions to the action of the Court in overruling the motion for a new trial properly preserved, and a prayer for appeal to this Court granted to McCalla as a defendant and cross-plaintiff, the amount of the appeal bond being fixed by the Trial Court at

$250.00, which bond was executed and appeal perfected to this Court. The following errors were assigned:

I—There is no material evidence to support the verdict rendered in each of the cases. Plaintiff-in-error made this the basis of his first specification in his motion for a new trial. (Tr. 123)

II—The verdict in each of the cases is against the law. Plaintiff-in-error made this the basis of his third specification in his motion for a new trial. (Tr. 124)

III—The verdict in each of the cases is the result of passion, prejudice and caprice. Plaintiff-in-error made this the basis of his sixth specification in his motion for a new trial. (Tr. 124)

█ With the record before us in its present condition, the only question for this Court to determine is whether or not there is any competent and material evidence shown by this record to support the verdict of the jury. It is not a question of preponderance of evidence at all, but simply stated:

Is there any material and competent evidence to support the verdict of the jury?

█ This Court will not reverse a verdict of the jury, in the absence of other error in the trial of the case, if there is material evidence to support it, and we think there is. Chattanooga Electric R. R. Co. v. Finney, 105 Tenn. 648, 58 S. W. 540.

In this opinion, the parties will be referred to in accord with their status in the Trial Court—Lawrence

E. Nelson as plaintiff and/or cross-defendant, and H. B. McCalla as defendant and/or cross-plaintiff.

The original warrant issued by the General Sessions Court charged the defendant with careless and negligent acts which resulted in damages to the plaintiff, and also charged violation of City of Memphis Ord. Secs. 1671, 1695, 1696 and 1682.

In the Circuit Court the defendant, for plea to the summons, entered a simple plea of "Not Guilty". He then, as cross-plaintiff, filed a cross-declaration in which he charged the original plaintiff with negligence, specifically in the first count charging common law negligence, and in the second count charging the violation of the City of Memphis Ord., Secs. 1671(a), 1681, 1682, 1683 and 1713.

The accident occurred at the intersection of Linden Avenue and Dunlap Street in the city of Memphis. At that point Linden Avenue is approximately 50 feet wide and Dunlap Street is approximately 30 feet wide. The original plaintiff had come into Linden Avenue from Walnut Street, which street appears from the record to be the first street intersecting Linden Avenue west of Dunlap, and according to the testimony of the original plaintiff, it is about 100 yards west of the intersection where the collision occurred. The plaintiff was traveling east on Linden, and the defendant was traveling south on Dunlap. Neither of them expected to make any turn at the intersection.

Linden Avenue, at the point of collision, has a white center line marker, with a sufficient space on either side of this center line for two lanes of traffic. These traffic

lanes are not each separated by any line or marker, but the proof clearly shows that traffic moves at that point on Linden Avenue in two lanes west and two lanes east.

At the intersection in question, buses of the Memphis Street Railway Company traverse Linden in each direction, and at this intersection to the north of Linden and west of Dunlap, the Memphis Street Railway Company has its building designated "car barn". One of its buses, approximately 45 feet in length, with no passengers aboard, traveled up to this intersection going east on Linden, the driver intending to turn at the intersection South on Dunlap and enter the car barn. It had come to the intersection on the south side of the center line, but in the traffic lane next to the center line, which was its proper position in order to make its left turn into Dunlap from Linden, and was stopped at that point, waiting for the traffic moving west on Linden to his left to clear; and while the bus stood in that position, the defendant approached the intersection on Dunlap, where there is a stop sign in the northwest corner of the intersection. The plaintiff, at the same moment, approached the intersection to the right of this large bus, with his right-of-way east on Linden open. When the defendant stopped on Dunlap at the stop sign, the bus driver testified that he could not make that left turn from Linden onto Dunlap even after the traffic had cleared to his left on Linden, with defendant's car standing at the intersection, and that he waited until defendant started up, came across far enough into the intersection for him to make the turn, which he did, and after being in the act of negotiating the turn he heard the crash, looked back, and saw the two cars practically together at the edge of the walk in the southeast corner of the intersection. The

driver of this bus, Dalton Chamberlain, was the nearest eye witness to what occurred except the plaintiff and defendant, each of whom was in their respective cars alone.

This intersection has no stop sign for traffic on Linden. There is no proof in the record whether Dunlap is a 2-way street or not. Evidently, from the testimony, it must be assumed that traffic travels both north and south on Dunlap, because the defendant was traveling south across the intersection and intended to continue south on Dunlap, and the bus driver was turning north' at the same intersection into Dunlap.

The plaintiff testified that he observed the bus had stopped as he approached the intersection and that it was to his left, and that the position of the bus was such that he could tell the driver intended to turn into Dunlap. He stated that the width of the space in Linden to the right of the bus was about 15 feet; that he was in the outer or righthand traffic lane as generally traveled, which was open; that he intended to continue east on Linden and did not see the car of defendant until it came across in front of the bus and he saw the fenders or right front when he was about five or six feet from it.

All the evidence is to the effect that both cars stopped in the southeast intersection of Dunlap and Linden at a point about where the stop sign is located on Dunlap directing traffic north on Dunlap Street to stop before entering the intersection, and that the right front of defendant's automobile and the left front of plaintiff's automobile were practically against each other, if not touching. Defendant states that his car knocked down the stake to which the stop sign was attached.

Mr. Furr, the traffic policeman who went to the scene a few minutes after the accident and before the cars had been moved from the position in which they stopped after the collision, made the same statement with respect to the position of the cars when he arrived. Defendant's car was struck at about where the right front door is hinged to the body post.

The defendant testified that he did not see plaintiff's automobile until it hit his automobile. The plaintiff testified that defendant said to him at the scene of the collision immediately after it occurred, that the bus driver had signalled him across the intersection. Defendant did not deny saying that, but he claimed that he did not remember saying it and further stated that he was rendered practically unconscious by the collision. Defendant also testified that the traffic traveling west on Linden at the time he approached the intersection was heavy, but there was practically no traffic on Linden in an easterly direction. Defendant testified that he was familiar with this intersection and crossed it frequently driving his automobile. There was no speed violations or reckless driving criminal charge against either of the parties and there was no evidence of any excessive speed by either of the automobiles at the time of the collision, though defendant's cross-declaration charged that the plaintiff was exceeding the speed limit as fixed by the City traffic ordinances.

The jury, with the evidence before it, would have been and was well warranted in finding that the defendant was guilty of proximate negligence by entering into the intersection with conditions prevailing at the moment of his entry, and also that he was negligent in

failing to see the car approaching from the west on Linden before it became hidden from his sight behind the bus.

■■ Much is said in the record about the existence of Ordinances of the City of Memphis by number and that they are in force; but the only Ordinances shown in the record anywhere are those copied into the declaration of defendant in his cross-action. The bill of exceptions begins on page 25 of the record. Neither in the technical record preceding that page, nor anywhere in the bill of exceptions, is there any evidence that the jury had the benefit of the Ordinances. Certain Ordinances are copied in the cross-declaration and also in the reply brief of the plaintiff or cross-defendant, but we cannot consider these Ordinances copied into the cross-declaration or the brief as a part of the evidence. In order for Ordinances to be a part of the proof, they must be proven and the Court cannot take judicial knowledge of City Ordinances. Tilford v. Mayor & Board of Aldermen of Woodbury, 26 Tenn. 190; Rutherford v. Swink, 90 Tenn. 152, 154, 16 S. W. 76; Brimer v. Municipality of Jefferson City, 187 Tenn. 467, 216 S. W. (2d) 1, 5.

■ It might be further stated that the Charge of the Court is not in the record, and while we must assume that it was correct on all points, there is nothing in the record to indicate that the Court charged the jury with respect to the effect of the Ordinances referred to. In the condition in which the record appears before us, we cannot determine the applicability of the City Ordinances to the action of either of the parties involved in this automobile collision. Particularly is this true in the light of the errors assigned. There is evidence both material

and competent to support the verdict of the jury, factually and legally.

■ Assignment of Error III charging that the verdict was affected by passion, prejudice and caprice must be overruled. The parties by stipulation admit the amount of the damage to the automobile of each party. There is no action on the part of the jury referred to in the brief which indicates any misconduct whatever, and certainly where the verdict is for the amount of the actual damages, with the amount thereof being agreed to by the parties, no inference of passion, prejudice or caprice can be drawn.

We have referred to the fact that the appeal by Mc-Calla from the judgment of the General Sessions Court was perfected by the execution of the oath prescribed for poor persons. When he filed his cross-action, a cost bond in the following words was executed:

"I BIND MYSELF to the defendant in the sum of Two Hundred and Fifty Dollars for the successful prosecution of this action, to be void on condition that I pay all the costs which may at any time be adjudged against the plaintiff, in the event said plaintiff shall not pay the same, otherwise to remain in full force.

"WITNESS my hand this 30th day of November, 1955.

"Margaret Spann (SEAL)" (R. 6)

The judgment on the verdict is shown on page 1 of this Opinion, and the judgment runs against the defendant "H. B. McCalla and surety, Margaret Spann" for the full amount of the verdict and all costs.

When the appeal was granted to this Court, the penalty of the bond was fixed at $250.00 by the Court below and executed by McCalla as principal and Capitol Indemnity Insurance Company, as surety. This bond is set out in full at R. 126 on printed form.

■ We find nothing in the record which warrants a judgment for the amount of the verdict against Margaret Spann, and while we are not called upon to determine the right or the validity of the judgment for $459.68 rendered by the Trial Court against Margaret Spann as surety, when she only executed a bond for costs, by any assignment of error, however there is no provision therein upon which a valid judgment could be rendered against her for any more than costs. See Sec. 20-1622, 20-1623, 20-1627, 27-313 and 27-315, T. C. A. We think the judgment of the Trial Court can and should be corrected to show judgment against Margaret Spann for costs only.

All Assignments of Error are overruled, and the judgment of the Lower Court is affirmed, with modification as to costs only against Margaret Spann. The original defendant and cross-plaintiff, who is the plaintiff-in-error in this Court, and his sureties, will be taxed with all the costs in the case in this Court.

Judgment will be rendered in this Court in favor of the original plaintiff Lawrence E. Nelson and against the original defendant, H. B. McCalla, for $459.68, with interest thereon at 6% per annum from April 27, 1956, and against H. B. McCalla and his surety on appeal bond, for all the costs of this case.

Carney and Bejach, JJ., concur.

AVERY, P. J. (W. S.) Plaintiff-in-Error has filed a Petition to Rehear in which he attacks the original Opinion of this Court in that the Court held:

"* * * Neither in the technical record preceding that page, nor anywhere in the bill of exceptions, is there any evidence that the jury had the benefit of the Ordinances. * * * In order for Ordinances to be a part of the proof, they must be proven and the Court cannot take judicial knowledge of City Ordinances. * * *"

Petitioner quotes from pages 87 and 88 of the transcript wherein reference is made to the Ordinances being relied upon by each party and quoted the Court as having said:

"The Court: All right. Ladies and gentlemen, before Mr. McKee completes his proof, he has stated in your presence that he is relying upon certain ordinances of the City of Memphis, *which he will read to you later.*

"Under our rules, counsel may stipulate that the ordinances were in full force and effect at the time and place of this occurrence; and, as I understand it, counsel have agreed to do that.

"The ordinances that Mr. McKee is relying upon, and that Miss Spann will rely upon, is that correct?" (Emphasis added.)

The Court's quotation clearly shows that while it was admitted that the parties relied upon certain ordinances which were in effect, he said:

"* * * which (meaning ordinances) he will read to you later."

In his statement he referred to the Ordinances relied upon by both parties, but the record does not show that they were ever read nor were certified copies introduced or proven in any way.

■ In the Petition to Rehear, plaintiff-in-error states that the ordinances were read "by the Court to the jury in his charge". However true this may be, on page 121 of the record it is stated that:

"There being no exception to the charge of the Court to the Jury, the jury charge is not included herein."

Therefore, this Court could not consider anything the Charge contained when the record did not reveal the Charge, even if such action would have been sufficient proof of the ordinances.

■ Petitioner further states in his petition that:

"This situation arose out of a misunderstanding and the ordinances did not appear in the proof properly through inadvertence."

Petitioner prays that a re-hearing be granted him and further that the petition be considered as a suggestion of diminution of the record and that the Bill of Exceptions be supplemented with the Charge of the Court containing the Ordinances referred to.

By Rule 20 of this Court, it is provided that:

"Suggestions of diminution of record shall be made before the case is called for trial, and at such

time as gives opportunity to have the record perfected for hearing, or the imperfection of the record will be waived; provided, however, that a suggestion of diminution of the record, accompanied by a duly certified transcript of the omitted part or parts of the record, if presented to the court before the case is finally disposed of, may be considered, if in the opinion of the court, justice so requires. When a diminution of the record is allowed, an entry on the minutes to that effect shall be made." See Fine v. State, 183 Tenn. 117, 121, 191 S. W. (2d) 173.

This Court points out the fact that it permitted, prior to the hearing, upon proper application duly made, a correction of the record at the suggestion of plaintiff-in-error. Further, it should be said that no new facts or law have been pointed out in the Petition to Rehear.

For the reasons stated in this Opinion, Petition to Rehear is denied.

Carney and Bejach, JJ., concur.