DINK CLARK, Plaintiff-in-Error, v. MRS. DAVE ENGELBERG et al., Defendants-in-Error. —436 S.W. (2d) 465.

Western Section. October 16, 1968.

Certiorari Denied by Supreme Court January 20, 1969.

W. C. Rodgers, Memphis, for plaintiff in error.

John S. Porter and Charles F. Newman, Memphis, Burch, Porter & Johnson, Memphis, of counsel, for defendants in error.

MATHERNE, J. This cause was previously before this Court and was reversed and remanded for a new trial in an Opinion announced of date June 29, 1967.

Plaintiff sued for damages as result of personal injuries sustained when he fell from the second story porch of an apartment house owned by the defendants. In his Declaration plaintiff alleged that on the occasion of said injuries he was visiting a friend, Charlie Vaughn, who lived on the second story of said apartment house, and in the exercise of reasonable and ordinary care for his own safety, leaned against a banister on the second story front porch of the premises, which banister, by reason of its decayed and rotted condition gave way, and plaintiff fell to the ground. Plaintiff alleged that defendants were guilty of gross negligence in not having repaired, maintained and kept said premises in good and safe condition for its ordinary use and occupancy. Plaintiff alleged that as result of the fall he suffered a broken neck and that he was rendered totally and permanently paralyzed from his neck to his feet.

Defendants by special plea admitted ownership of the apartment house and that plaintiff fell on the date alleged. Defendants deny every other material allegation in the Declaration including those allegations of ordinary care by plaintiff; the rotten condition of the banister; negligence and gross negligence on their part. Defendants alleged that plaintiff did not lean against the banister but that he became engaged in a scuffle or fight with one Charlie Vaughn, the tenant in said apartment, and was knocked, pushed or shoved against the banister with force greater than it was designed to withstand; that plaintiff was at the time intoxicated, and the fall was due to his own negligence in the premises. Defend-

ants plea the action of the tenant in knocking plaintiff against the banister as the efficient intervening cause and that plaintiff assumed the risk of injury when he placed his weight against the banister.

The cause was tried before a jury which returned a verdict in favor of plaintiff in the amount of $25,000.00. Judgment was entered thereon.

Plaintiff moved for a new trial which was overruled, and he has perfected his appeal in the nature of. writ of error to this Court. Plaintiff assigned as error (1) The verdict is so inadequate as to evince passion, prejudice and/or unaccountable caprice on the part of the jury, (2) The verdict of the jury is manifestly contrary to the great weight and preponderance of the evidence, (3) The verdict of the jury is the product of compromise on the part of the jury, and (4) The Trial Court failed to grant plaintiff's special instructions pertaining to notice on the part of defendants of the defective banister and the consequences thereof. The defendants did not appeal.

Plaintiff testified that he was at the Charlie Vaughn apartment concerning an automobile battery he had loaned Vaughn. After completing his business he was talking with Vaughn standing on the second story porch in front of Vaughn's apartment when he "backed up to the banister to rest and that's when I went overboard". Plaintiff stated he knew nothing of the condition of the banister before he leaned on it. He stated that he and Charlie Vaughn had not been and were not fighting at the time of the fall, and there was no misunderstanding between them. That Charlie Vaughn was drinking beer when plaintiff got there, and plaintiff had "about two swallows of beer." A witness, Shirley Burks, testified

that plaintiff had hardly touched the banister when he fell; that the banister was so rotten at the end where plaintiff fell that it was not fastened to the post. It was just pushed up against the post. Imogene Vaughn, wife of Charlie Vaughn, testified that the banister was loose from the post and that her husband had asked defendants to fix it; that on the occasion of the accident her husband and plaintiff were not arguing, cursing or fighting; that Charlie Vaughn had died since the accident. Leroy Ellis testified he was on the porch when plaintiff fell and that plaintiff and Charlie Vaughn were not fighting; that plaintiff barely leaned against the banister, it gave way and he fell. Other witnesses testified for plaintiff to the general effect that plaintiff was not fighting at the time of the fall and that the banister was defective. Most of these witnesses were questioned rather extensively on cross examination as to statements made by them at a former trial of this cause and on discovery depositions in an effort to impeach their testimony before the jury in this trial.

The testimony, photographs and exhibits presented would establish as a fact that this particular banister was of light weight and of slight construction as distinguished from a heavy timber constructed in a rigid manner, and it had rotted extensively at the ends with the appearance that it would not hold any nail or bolt to secure it to a post or support.

The defendant, Mrs. Ray Engelberg Baum, testified that the banister was in good repair and that no one had asked that it be fixed or repaired. That she had received notice from the City that repairs were needed on the building but understood this pertained to the rear of the building. That she had collected rent at the Vaughn apartment three or four days before the accident.

Defendants called several witnesses who testified that plaintiff was intoxicated at the time and involved in an altercation with Charlie Vaughn. This testimony will be referred to later. Both sides relied heavily upon prior statements made by opposing witnesses in an effort to impeach the witnesses.

Plaintiff's first Assignment of Error challenged the verdict as inadequate. Defendants contend that the jury found remote contributory negligence on the part of plaintiff and reduced the verdict accordingly.

The evidence shows that prior to the accident on November 4, 1965, plaintiff was an able-bodied man, thirty-one years of age, and employed at the salary of $2.00 per hour as a concrete finisher. That as a result of this fall, he sustained serious and permanent injuries. He suffered a fracture and dislocation of the cervical vertebrae at the level of the sixth and seventh vertebrae, and the initial neurological examination showed that he was quadriplegic below the level of the sixth cervical vertebrae. He had no control of the bowels or bladder and had only limited movement in the upper extremities. A metal device was placed in the skull and used for traction in an attempt to reduce these fractures. A spinal fusion was attempted involving the fifth, sixth and seventh cervical vertebrae. He experienced difficulty in breathing due to paralysis of the nerves going to the chest muscles. This resulted in several severe bouts with trying to breathe for several weeks, and on one occasion he had a cardiac arrest, but his heart was re-started by medical personnel. An operation was performed so as to drain his bladder to the front of the adbominal wall instead of where it normally drains. Due to the lack of feeling he developed large bed sores, and skin grafts were required in an

attempt to alleviate this condition. Plaintiff's present condition is that he has a complete paralysis of the lower extremities. He can move his shoulders slightly but cannot control his hands; he cannot feed himself or do anything to care for himself. He can sit for intervals in a wheelchair if placed therein. All bowel movements are by enema, and all bladder eliminations are by a tube in the stomach. The undisputed testimony, both lay and expert, is that this man's condition will not change, the same is permanent, and he is totally and permanently disabled. The plaintiff was confined to the hospital for six months. He proved hospital expenses in the amount of $7,239.05 and testified he owed all his doctor's bill in addition thereto.

When are we justified in reversing the Trial Court because of the inadequacy of a verdict in a personal injury case?

■ The amount of the verdict is primarily for the jury to determine. Lunn v. Ealy (1940) 176 Tenn. 374, 141 S.W.2d 893. It is not within the province of an appellate court to substitute its judgment for that of the jury and the Trial Judge. McCullough v. Johnson Freight Lines (1957) 202 Tenn. 596, 308 S.W.2d 387.

■ The general rule is that the verdict of a jury awarding compensatory damages, approved by the Trial Judge, will not be disturbed by the appellate courts where there is material evidence to support it. McCullough v. Johnson Freight Lines, supra.

■ Some limitations to this general rule have developed. Where the jury verdict is so grossly inadequate in comparison with injuries actually sustained and proven as to evince passion, prejudice or unaccountable caprice

on the part of the jury and where there is *no material evidence of contributory negligence* on the part of the plaintiff, the reviewing courts will look into the facts and set the verdict aside. Flexer v. Crawley (1953) 37 Tenn. App. 639, 269 S.W.2d 598; City of Nashville v. Fox (1928) 6 Tenn.App. 653. In the principal case there was material evidence from which the jury could have found contributory negligence.

Another limitation to the general rule was set out by Chief Justice Neil in the *McCullough* case wherein he stated:

"In the absence of material evidence proving *remote contributory negligence* in mitigation of damages we agree without hesitation * * * that where the verdict of the jury is so grossly inadequate in comparison with the injuries actually sustained and proven as to evince passion, prejudice or unaccountable caprice on the part of the jury, that the appellate courts will look into the facts and set the verdict aside." (Emphasis added)

In applying the above language to the principal case we must determine if there is material evidence on which the jury could find remote contributory negligence. It is obvious, in that a verdict was awarded, that the jury in this case did not find direct and proximate contributory negligence on the part of the plaintiff.

Defendants' witness, Jesse Laird, testified he was in the Charlie Vaughn apartment on the occasion of the accident. That plaintiff and Vaughn were gambling, an argument started and Vaughn asked plaintiff not to curse before his (Vaughn's) wife and children, that plaintiff had been drinking but was not what you would call "staggering drunk", that Vaughn and plaintiff were out

on the porch, he (witness) heard something crack and saw Vaughn reaching for plaintiff as plaintiff fell over the banister.

Witness, M. J. Williams, testified that he was on the porch of Charlie Vaughn's apartment, he heard plaintiff and Vaughn cursing each other and arguing, that plaintiff came out the door first and Vaughn followed. Vaughn told plaintiff to get out, and as plaintiff got half way through the door, Vaughn hit him and some kind of way plaintiff got over the banister. Vaughn reached for plaintiff but plaintiff fell. This witness testified plaintiff was drinking.

Julius Turner testified that plaintiff and Charlie Vaughn were shooting dice, that they got into an argument and tussled some in the front room, called each other names and were angry. That plaintiff went out the door onto the porch and Vaughn followed. When witness got to the front door, plaintiff was falling off the porch. Turner testified that plaintiff was drunk.

Therefore, we find there was material evidence in the record that plaintiff was drinking. The jury could have found him to have been drunk. The jury also could have found that he became involved in an argument and fight with Charlie Vaughn which resulted in his being knocked, pushed or shoved against the defective banister. The jury could have found from the material evidence introduced that plaintiff was guilty of remote contributory negligence in that he did become intoxicated to such an extent that he got into an altercation with Vaughn, and as a result, came into abnormal, unusual and unanticipated contact with the defective banister.

■ Also, when considering the construction of this banister, its rotted and deteriorated condition, its being on a second story porch, there was material evidence from which the jury could have found remote contributory negligence in the fact that plaintiff did "lean" against the banister, when in the exercise of ordinary care under the circumstances, he should have discerned its condition and not have placed his weight against it in any manner. Dixon v. Lobenstein (1939) 175 Tenn. 105, 132 S.W.2d 215.

■ Remote contributory negligence must be considered in mitigation of damages as a matter of law; it is not a matter within the discretion of the jury. Louisville & N R Co. v. Martin (1904) 113 Tenn. 266, 87 S.W. 418; McCullough v. Johnson Freight Lines, supra.

■ This Court has no hesitancy in stating that we could have approved a verdict in an amount greater than that rendered in this cause. However, where there is material evidence upon which remote contributory negligence can be found, we cannot weigh the remoteness but must accept the verdict as rendered by the jury and approved by the Trial Judge.

■■ Plaintiff insists that there are discrepancies in the testimony of defendants' witnesses and that their presence at certain places at certain times rendered their knowledge of facts about which they testified as impossible. Again, we cannot weigh the evidence nor can we discard material evidence. To do so would be to invade the province of the jury, which body alone has the authority to weigh the evidence, pass on the credibility of witnesses, and to accept or reject testimony legally admitted in evidence by the Trial Judge.

It is noted that Chief Justice Neil in the *McCullough* case was careful to point out at page 392 of 308 S.W.2d, the following:

"The question of gross negligence by the defendant is not made on this appeal. The trial judge sustained the defendant's motion for a directed verdict as to each and every count in the declaration alleging punitive damages."

In the instant case the plaintiff alleged in his Declaration that the defendants were grossly negligent in the failure to repair and maintain the banister so as to make same safe for the use of occupants of the apartments and others lawfully on the premises. The defendants by special plea expressly denied this allegation. However, the Trial Judge did not define gross negligence in his charge, nor did he instruct the jury that should they find gross negligence on the part of the defendants what the effect would be as to plaintiff's alleged contributory negligence. There was no special request for instruction in any regard pertaining to gross negligence. There was no ground in plaintiff's Motion for New Trial, nor is there an assignment of error in this Court complaining of a failure to charge the law of gross negligence. As interesting as a proper presentation of gross negligence might have been in this cause, the same is not before the Court and cannot be considered. Assignment of Error I is overruled.

Assignments of Error II and III challenge the verdict as being manifestly contrary to the great weight and preponderance of the evidence; that it is without material evidence to support same; and is the product of compromise on the part of the jury.

The assignment that the verdict is manifestly contrary to the great weight and preponderance of the evidence does not present a question properly to be determined by this Court on appeal. Stacks v. Veteran's Cab Co. (1962) 51 Tenn.App. 272, 366 S.W.2d 539.

An assignment of error that there is no evidence to support the verdict requires a reviewing court to review the evidence, such a review not being to determine where the truth lies or to find the facts, but only to determine whether there was any substantial evidence to support the verdict. Nashville, C. & St. L. Ry. v. Crawford (1954) 39 Tenn.App. 37, 281 S.W.2d 69. This question does not require a finding that there was a preponderance of evidence to support the verdict. McCalla v. Nelson (1957) 44 Tenn.App. 161, 313 S.W.2d 462. The assignment in this Court that the verdict is without material evidence to support same, considered in the light of the defendant, is without merit in that this Court has heretofore found as a fact in this cause that there is material evidence to justify a jury finding of remote contributory negligence on the part of the plaintiff.

Plaintiff, the party in whose favor the verdict was rendered, claims the verdict is the result of compromise. The jury had before it issues of negligence, contributory negligence, remote contributory negligence and others. The plaintiff does not point out wherein the Trial Court in any manner coerced, forced or threatened the jury into a compromise. Where the demand is for unliquidated damages, and under the issues no one could say that the jury could reach only one conclusion as to the amount of the verdict, an appellate court cannot, without more, declare the verdict reached a compromise when there are probabilities that a jury could reach a

different amount. High v. Lenow (1953) 195 Tenn. 158, 258 S.W.2d 742, at p. 746. Assignments of Error II and III are overruled.

◼ By Assignment of Error IV, plaintiff claims error due to the refusal of four special requests presented to the Trial Judge for submission to the jury. All these requested instructions deal with notice and knowledge defendants had, or should have had, of the defective banister and are concerned only with the liability of the defendants. Since the verdict of the jury on the issues of liability was in favor of plaintiff could not have been prejudiced by the refusal of these requested instructions. Flexer v. Crawley (1954) 37 Tenn.App. 639, 269 S.W.2d 598. Plaintiff also failed to comply with Rule 12(3) of this Court in that he did not set out in this Assignment of Error the instructions refused by the Trial Court. Assignment of Error IV is therefore overruled.

It results that all Assignments of Error are overruled, and the judgment of the Trial Court is affirmed. The cost of this appeal is adjudged against the plaintiff; the cost below will remain as there adjudged.

Carney, P.J.(W.S.), and Bejach, J., concur.