Thomas NETHERY, Plaintiff-Appellant,

v.

David HORNBUCKLE et al., Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

Dec. 3, 1971.

Certiorari Denied by Supreme Court May 15, 1972.

**544**

H. Tom Kittrell, Nashville, for plaintiff-appellant.

Boult, Cummings, Conners & Berry, Nashville, for defendant-appellee, David Hornbuckle.

Howser, Thomas, Summers & Binkley, Nashville, for defendant-appellee, Jerry Gann.

Gracey, Buck, Maddin & Cowan, Nashville, for defendant, Benward, Inc.

## OPINION

SHRIVER, Presiding Judge.

This is a suit brought by Thomas Nethery against David L. Hornbuckle, Jerry Gann and Benward, Inc., to recover damages for personal injuries. The plaintiff was accidentally burned when he ignited a pile of debris which he had collected while engaged in a bulldozing operation on the farm of defendant, David L. Hornbuckle.

At the conclusion of plaintiff's proof the Trial Judge directed a verdict in favor of the defendant, Benward, Inc., but submitted to the jury the issues as to liability of Hornbuckle and Gann, resulting in a verdict and judgment in favor of the plaintiff against said two defendants in the amount of $3,500.00.

Neither of said defendants has appealed but the plaintiff has appealed and has assigned errors.

## ASSIGNMENTS OF ERROR

There are seven assignments of error, as follows:

"The learned Court erred in refusing to grant a new trial for the following reasons:

1. Because the verdict is contrary to the weight of the evidence.

2. Because the verdict is contrary to the law and the evidence.

3. Because there is no evidence to support the verdict.

4. Because the verdict is so inadequate under the evidence and proof presented in the case as to show passion, prejudice and caprice on the part of the jury.

5. That there is no material evidence to support the verdict and that the verdict is against the preponderance of the evidence.

6. It was error for the learned Judge to sustain the motion for a directed verdict by the defendant, Benward, Inc., at the conclusion of the plaintiff's testimony."

7. The seventh assignment charges error in refusing to grant a new trial because of certain irregularities in connection with the jury's deliberation and manner of reaching a verdict, as shown by the affidavit of a juror.

## THE PLEADINGS AND THE FACTS

The Declaration charges and the record shows that on May 27, 1967 the plaintiff, who owns and operates a bulldozer, was engaged in doing some bulldozing work for the defendant, David L. Hornbuckle, on his farm near Greenbrier, Tennessee. In the course of clearing and bull-

dozing certain land for the defendant, Hornbuckle, plaintiff had accumulated a large pile of trash and debris which he was undertaking to burn.

The Declaration asserts that the plaintiff had poured large quantities of diesel fuel on this pile of trash or debris in an effort to burn it but had been unsuccessful in his attempts when the defendant, Hornbuckle, arrived and, while discussing the matter with him, the defendant, Jerry Gann, drove up in a truck owned by the defendant, Benward, Inc. Thereupon, Gann was asked whether or not he had in his possession any diesel fuel which he could furnish for burning the trash pile. It is asserted that when Gann answered in the affirmative, plaintiff "set about his business away from the vicinity of where Hornbuckle and Gann were talking" and upon his return found that Hornbuckle and Gann had sprayed the trash pile with what plaintiff thought was diesel fuel, and that Gann then suggested that he go ahead and light the fire. When he did so an explosion resulted which severely burned and injured him. It is alleged that after his injury he learned that, instead of diesel fuel, gasoline had been sprayed on the pile of debris.

It is charged that the concurring negligence of the defendants proximately resulted in the severe and permanent injuries suffered by plaintiff, necessitating confinement in the hospital for a period of time and resulting in extreme pain and suffering on his part and in certain permanent injuries, particularly to his hands.

After a Demurrer of the defendant, Benward, Inc., was overruled, said defendant entered a general issue plea of not guilty.

Thereafter, on motion, the defendants were required to plead their defenses specially. Defendant, David Hornbuckle, then entered his plea wherein, among other things, he charged that the defendant, Jerry Gann, who was driving a truck of Benward, Inc., when asked if he had any diesel fuel, replied that he was out of such fuel but that he did have a few gallons of gasoline with water which he was going to have to dispose of. Thereupon, his truck was driven closer to the brush pile and gasoline was pumped out of the fuel drum located on the back of the truck onto the brush pile, and that the plaintiff participated in this procedure and was fully aware that the fuel placed on the brush pile was gasoline rather than diesel fuel. Furthermore, it is charged that a discussion occurred in plaintiff's presence as to the best and safest way to light the gasoline and it was determined that a paper wrapped around a rock should be lit and thrown on the brush pile from a safe distance. It is further averred that while defendants Hornbuckle and Gann were looking for paper to use as a means of safely lighting the fire, the plaintiff went to the trash pile and set fire to it, causing the explosion which injured him. It is averred by defendant Hornbuckle that he shouted a warning to the plaintiff but this warning was not heeded.

The foregoing averments in the plea of Hornbuckle were supported by his testimony and that of the defendant Gann.

The special plea of defendant, Benward, Inc., asserts that said defendant had no connection whatever with the operation on Hornbuckle's farm carried on by the plaintiff and Hornbuckle, and the only purpose for which the defendant Gann approached the scene of the accident was to inform Mr. Hornbuckle that, by permission of his wife, the truck of defendant had been temporarily parked on Hornbuckle's property. It is denied that Gann had any authority to furnish gasoline or fuel for the burning of trash or to do any other act in connection therewith and this plea is supported by the testimony of Gann and other witnesses.

The special plea of defendant, Jerry Gann, asserts substantially the same facts as those related in the pleas of the other two defendants and avers that plaintiff participated in the procedure by which the gasoline was sprayed on the trash pile

and that after the spraying of the gasoline the defendant Gann moved the truck away from the area, whereupon the explosion occurred. It is alleged that plaintiff's injuries were the sole, direct and proximate result of his own negligence.

Assignment No. 6 asserts that it was error for the Trial Judge to sustain the motion for a directed verdict by the defendant, Benward, Inc., at the conclusion of plaintiff's proof. This assignment presents the question whether there was any evidence to justify a verdict against the defendant, Benward, Inc.

■ The evidence in the record sustains the plea of this defendant in that it is shown that the primary purpose of the visit of Mr. Gann to the scene of the accident was to notify Mr. Hornbuckle that a machine of Benward, Inc., had been parked on his property with the permission of his wife. While there is some evidence that Mr. Gann used the occasion to encourage Mr. Hornbuckle to engage Benward, Inc., to build a driveway for him, all of the testimony is to the effect that Mr. Gann was a workman in the grading department of Benward, Inc., and that he had no duties in connection with the solicitation of business for his employer. We find no evidence in the record to justify the conclusion that, in supplying fuel to burn the brush pile, the defendant Gann was acting within the scope of his employment by, and on the business of, the defendant, Benward, Inc.

Counsel for plaintiff argues that, after the verdict was directed, testimony was introduced in connection with the trial as to the other two defendants, that would support a verdict against Benward, Inc. We have examined the testimony referred to and are of opinion that, even if said testimony could be considered in connection with the insistence of plaintiff as to the liability of Benward, Inc., it is still insufficient to support a verdict against that defendant, hence, the sixth assignment is overruled.

■ Assignment No. 1, "because the verdict is contrary to the weight of the evidence," and Assignment No. 2, "because the verdict is contrary to the law and the evidence," and the assertion in Assignment No. 5 that the verdict is against the preponderance of the evidence do not present any question for determination by this Court. Under numerous authorities in Tennessee these assignments are insufficient to raise any issue for determination on appeal of a jury verdict which has been approved by the Trial Judge. Lyman v. American Natl. Bk. & Trust Co., 48 Tenn. App. 328, 346 S.W.2d 289, and cases cited there; Leach v. Leach, 52 Tenn.App. 606, 376 S.W.2d 739; Clark v. Engelberg, 58 Tenn.App. 721, 436 S.W.2d 465.

■ Assigment No. 3 and the first clause in Assignment No. 5 which assert that there is no evidence to support the verdict must be considered in conjunction with Assignment No. 4 which states that the verdict is so inadequate under the evidence as to show passion, prejudice and caprice on the part of the jury. This is true because, as hereinabove noted, the defendants Hornbuckle and Gann did not appeal, hence, the sole remaining questions in this case are (1) as to the inadequacy of the verdict, and (2) under Assignment No. 7, the alleged irregularity in the jury's deliberations.

Although there was evidence before the jury that the plaintiff was present and participating in the discussion as to the identity of the fuel sprayed on the brush fire which was found to be gasoline; that plaintiff participated in the discussion as to the safest method of lighting the fuel-soaked brush pile; that he was present and participated in the discussion about wrapping paper around a rock to be lighted and thrown onto the pile from a safe distance; that he was holding a crumpled paper cup in one hand when he kneeled by the brush pile to light the fuel; and that beyond question the plaintiff was shown to have worked with internal combustion engines and the fuels used by them and had much experi-

ence in handling gasoline and diesel fuels and knew the danger involved in lighting either of these fuels; nevertheless, we feel we cannot accept the proposition advanced by counsel for the defendants that the action of plaintiff in connection with his injuries could be regarded as remote contributory negligence, thus supporting a diminution of the verdict which was much smaller than plaintiff had insisted upon and had expected. It would seem to us that plaintiff's negligence, if any, must have been proximate under the circumstances shown.

■ As to the question of plaintiff's contributory negligence, while there is much evidence that would have supported a jury verdict for the defendants based on plaintiff's contributory negligence, the jury resolved this issue in favor of plaintiff and we feel that, under the evidence in the case, the verdict for plaintiff should be affirmed.

As to the inadequacy of the verdict which is the chief burden of plaintiff's insistence here, we call attention to the fact that there are such discrepancies in the testimony of the plaintiff and his wife regarding his injuries and the extent thereof, that the jury could have, and evidently did, conclude that plaintiff deliberately undertook to exaggerate his injuries and that they were in no wise as extensive as he claimed them to be. For example, plaintiff, and his wife testified that his hair was melted and Mrs. Nethery testified that it came off his head like taking off a bathing cap, but the photographs introduced as Exhibits 1 to 5 and taken a short time after his admission to the Park View Hospital show him with a full head of hair which, indeed, seemed to be quite well groomed.

Plaintiff's wife testified that plaintiff was a near invalid through Christmas, 1967, and that she had to feed him because he could not hold a fork, had to give him water through a straw because he could not hold a glass, had to transport him in a car because he could not hold a steering wheel and he had to keep his arms resting on pillows.

While these conditions no doubt did exist for some weeks after the accident, the record indicates that as early as August 18, 1967, and possibly as early as July 10th of that year, plaintiff was again operating his bulldozer. He, himself, testified that he resumed operation of his bulldozer by the middle of October, 1967, although he said that he had difficulty in doing so and that, in using the levers, etc., on the bulldozer, blisters were raised on his hands and that he suffered pain and discomfort in the operation of his bulldozer which, no doubt, was true.

Again, plaintiff testified that he owed medical and hospital bills to the total amount of $2,596.70, but it was later shown that the defendant Hornbuckle had voluntarily paid $1,723.20 of this bill after being told by plaintiff's wife that they had no money and were in financial difficulties.

Again, plaintiff stated on the witness stand that he had lost $20,000.00 during the remaining months of 1967 after his injury on May 27th of that year, and that he lost from $50.00 to $60.00 a day by reason of the accident. However, his financial records failed to support him in these assertions and left much doubt as to the amount of his financial loss by reason of his injuries.

Finally, Dr. C. R. Johnson, who treated him from the beginning of his disability, disagreed with his statements that he had peeled or scraped the skin off of his arms one or more times and testified that plaintiff's burns were second and not third degree burns and, while he supported the proposition that there was some disability in his hands, the doctor's deposition might well have been interpreted by the jury as failing to support much of the claim of plaintiff as to the seriousness and extent of his injuries.

■ In view of all of these facts and circumstances, we cannot say that the verdict of the jury was so inadequate as to show passion, prejudice or caprice on the part of the jury or to shock the conscience of this Court.

On appeal, it is not within the province of the Appellate Court to substitute its judgment for that of the jury as approved by the Trial Judge. The test is not what members of the Appellate Court would have awarded had they been jurors. The test is was there material evidence to support the verdict. McCullough v. Johnson Freight Lines, 202 Tenn. 596, 308 S.W.2d 387; Clark v. Engelberg, 58 Tenn.App. 721, 436 S.W.2d 465, and many cases.

The seventh assignment charges error in refusing to grant a new trial because of certain irregularities in connection with the jury's deliberations and the amount of the verdict.

At the hearing on a motion for a new trial, counsel for plaintiff produced an affidavit of Francis G. Kaylor, a member of the jury, stating:

" . . . the way we reached the verdict was that we all put down our separate figures and averaged these figures out and agreed to be bound by said figure."

However, a subsequent affidavit by the same juror was to the effect that, at one point during the deliberations of the jury, an average was taken in which each juror submitted his opinion as to what the amount of the verdict for plaintiff should be. These figures were added together and divided by twelve, resulting in a figure in the approximate amount of $4,500.00. The affidavit then proceeds:

" . . . There was no agreement prior to the making of this average that the jury would be bound by the result reached. The result of approximately $4,500.00 arrived at by this process was, in fact, not agreeable to the jury and the jury continued its deliberation for approximately two more hours before finally arriving at the figure of $3,500.00 which it awarded."

The affidavit of Mr. Kaylor proceeds by saying that he had signed a previous affidavit which was inaccurate and that the average produced a working figure which, after approximately two hours of further deliberation, resulted in an amount which all of the jurors then agreed was a fair and just amount and which was awarded in view of the evidence.

There is an additional affidavit of another juror, Mrs. Robert W. Llovet, which is to the effect that, upon suggestion of one of the jurors, that each put down a figure which, when divided by twelve, resulted in a figure of approximately $4,500.00, but there was no agreement made before the average was taken that the jurors were to be bound by it and, in fact, the figure arrived at by this means was not acceptable and the jury continued its deliberation until finally arriving at a figure of $3,500.00 and that the foregoing was the only average taken.

The Trial Judge considered that the foregoing was not sufficient grounds upon which to set aside the verdict of the jury and we agree with the conclusion of the Trial Judge.

Where a jury employs an average in their deliberations, their verdict is not a gambling verdict and void in the absence of an antecedent agreement to be bound by the results of the average. Particularly is this true where the jury's verdict is different from the amount resulting from the average. Mayor & Aldermen of Town of Morristown v. Inman, 47 Tenn.App. 685, 342 S.W.2d 71.

It results that all assignments of error are overruled and the judgment of the Trial Court is affirmed.

Affirmed.

PURYEAR and TODD, JJ., concur.