**Randall Clyde GASTON**

v.

**AQUASLIDE 'N' DIVE CORPORATION and Carl R. Meyer.**

**Civ. No. 3–79–244.**

United States District Court, E. D. Tennessee, N. D.

Jan. 8, 1980.

Rom Meares, Maryville, Tenn., Bland D. Winfrey, Lenoir City, Tenn., for plaintiff.

Jack B. Draper, Knoxville, Ten., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Defendants have moved for judgment notwithstanding the verdict, or in the alternative for a new trial or a remittitur. The first point made by the defendant Meyer is that the Court lacked personal jurisdiction over him and should have sustained the

motion to dismiss him from the case, which was made during the trial on the merits.

The motion was made at the beginning of the trial and renewed after all the proof was in and the parties rested. The evidence showed that Meyer, a resident of Texas, is president of defendant Aquaslide 'N' Dive Corporation, and that he and his wife are owners of the stock of the corporation. He designed the swimming pool slide which is the subject of the lawsuit and prepared the instructions for installation. Defendant insists that there is no evidence to show that Meyer has conducted any business in Tennessee, owns any property in Tennessee, has been personally present in Tennessee conducting any activities, or has sold any product in Tennessee. Meyer says that it was Aquaslide who sold the swimming pool slide and caused the delivery of same to be made by common carrier in Tennessee in 1967.

■ Defendant Meyer insists that under these facts the Court should have sustained his motion for dismissal. We do not agree. The jury could have found that the alleged negligence of Meyer occurred without the State of Tennessee, but the resulting tortious injuries occurred within Tennessee. Under those facts, Meyer is subject to process in Tennessee under T.C.A. § 20–235(b). *Hanvy v. Crosman Arms Company, Inc.,* 225 Tenn. 262, 466 S.W.2d 216 (1971); *Kroger Co. v. Dornbos,* 408 F.2d 813 (6th Cir. 1969). In the case of *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir. 1968), the court pointed out three essential criteria to support jurisdiction over a person who does an act outside the state which causes harm to a person in Tennessee. The most important of these is as follows:

> Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. 401 F.2d at 381.

The finding of the jury in this case, i. e., that the tortious conduct of defendant Meyer occurred outside of the State of Tennessee, but that the consequences of such conduct occurred in Tennessee, establishes just such a connection. The Court is aware that *Mohasco, supra,* is a contract case, but we feel that it correctly defines the constitutional boundaries of *in personam* jurisdiction even in tort cases such as the one at bar. We hold, therefore, that defendant Carl Meyer, individually, was properly subject to the jurisdiction of this Court.

■ The second point made by the defendant is that the verdict of the jury is against the weight of the evidence and the evidence preponderates against the verdict. We do not sit as a state judge in this case and the preponderance of evidence rule relied upon by the defendants does not apply in a federal case. The applicable rule in a federal case is whether there is any substantial evidence to support the verdict; if so, the trial court should not disturb the verdict if the trial was otherwise free from errors. *Weese v. Chesapeake & O. Ry. Co.,* 570 F.2d 611 (6th Cir. 1978). In the present case, we think there was substantial evidence to support the verdict of the jury.

The third point made by the defendants is that insofar as the Court sustained defendants' pre-trial motion to exclude all evidence relative to the safety standard promulgated by the Consumer Product Safety Commission, the Court erred by allowing the introduction of evidence which related directly to the studies which formed the basis for the standard, the requirements of the standard regarding warning signs and instruction and use labels, and the efforts of the defendants to comply with the standard. The Court has been furnished with a transcript of the evidence on the subject, portions of which defendants rely upon for reversal being underscored by counsel for the defendants, and has examined it with care. The record shows that the Court did what was proper to keep out all testimony dealing with this subject.

■ Admittedly, the Court was faced with a difficult task in view of the persistence of counsel for the plaintiff on this subject. The Court on more than one occasion instructed counsel for the plaintiff not

to introduce any proof on this subject. In spite of this instruction, Mr. Meyer, himself, on many occasions referred to the standard. He is not in a position to take advantage of his own wrong or mistake. It is the opinion of the Court that it did not err in dealing with this subject.

The last point made by the defendants is that the award of $1,250,000 is beyond the range of reasonable compensation. Admittedly, the injuries of the plaintiff were very severe—so severe that he cannot be made whole by money award. The best that can be done for him is to render a reasonable award, taking into consideration the character of his injuries, his life expectancy, his earning power, his state of health at the time of his injuries and all other relevant facts and circumstances. We do not recall any award rendered in this court for damages for personal injuries equal to $1,250,-000. As pointed out in defendants' brief, even with inflation the fact remains that money can be safely invested at a rate of 10% to 11% interest. One million dollars invested at 10% would provide an annual income of $100,000 to plaintiff without interfering with the principal.

An examination of the books shows that the verdicts are not uniform in quadriplegic cases, or in other cases where the party involved is permanently and totally disabled. Many of the cases show that $1,250,-000 is much more than other verdicts that have been rendered in similar cases. We are confident that the verdict is much more than in the ordinary case in this Court. We do not recall any case, nor have we found any case in the examination of the records in this Court or in the books dealing with other Tennessee cases, in which a verdict of the size of the one under consideration was allowed to stand. In one case dealing with injuries comparable to those of the plaintiff, the jury allowed $460,000 for the paralyzed husband, and $540,000 for his wife. The verdict for the wife in that case was reduced by compromise settlement by $290,-000, but the husband's verdict of $460,000 was allowed to stand. *Underdown v. Keen Transport*, Civ.No.7686 (1972).

Cases in other jurisdictions support a finding that this verdict is excessive. In *Brinegar v. San Ore Constr. Co.*, 302 F.Supp. 630 (D.C.Ark.), a 23-year-old deckhand with a 46 year life expectancy suffered a broken neck resulting in permanent paralysis. The plaintiff was bedridden, unable to sit up or to control his bowels or bladder, and sexually impotent. The jury returned a verdict of $1,000,000. In South Carolina, a 17-year-old girl was awarded $780,000 for injuries received in an automobile accident rendering her totally paralyzed from the chest down. The evidence showed that she suffered from depression and had to be strapped into her wheel chair to keep from falling out. *Mickle v. Blackmon*, 252 S.C. 202, 166 S.E.2d 173. Similarly, a Virginia jury awarded $650,000 to a man with a 27 year life expectancy who was rendered a quadriplegic requiring constant attention when he fell from a porch. *Gumenick v. United States*, 213 Va. 510, 193 S.E.2d 788. In Kansas, a 20-year-old man was awarded $450,000 for complete paralysis below the 8th thorasic vertebrae. *Hampton v. State Highway Com.*, 209 Kan. 565, 498 P.2d 236. And a $400,000 verdict was upheld for a 23-year-old man in electronics school who had "substantial future earning capacity," for injuries suffered in an automobile accident rendering him paraplegic, confined to a wheel chair, and permanently in need of nursing care. *Young v. Warr*, 252 S.C. 179, 165 S.E.2d 797.

One Mississippi case is of particular interest. A 20-year-old man received a verdict of $550,000 for injuries suffered when he dove into shallow water. His spine was severed resulting in quadriplegia and it was recognized that he would require nursing care for the rest of his life. The court ordered a new trial unless the plaintiff agreed to remit $450,000 because of contributory negligence. *Dendy v. Pascagoula*, 193 So.2d 559 (Miss.). In Wisconsin, $300,-000 was deemed adequate compensation for spinal injuries causing paralysis below the chest cage and loss of control over excretory functions suffered by a 19-year-old physical education major who fell some 60 feet from a hiking trail down a gorge. *Cords v. Anderson*, 80 Wis.2d 525, 259 N.W.2d 672.

In the only reported Tennessee case involving permanent quadriplegia, a 31-year-old man who fell from a bannister was awarded only $25,000. In that case, however, there was evidence that the man was drunk. *Clark v. Engelberg*, 58 Tenn.App. 721, 436 S.W.2d 465.

The Court has also considered the testimony of the plaintiff regarding his own work experience. While it appears that he worked as an automobile repairman for his father and for two or three other people, there is no evidence in the record of the wages he earned in performing this work.

Another element of damages is the care required by plaintiff. Plaintiff's expert, Professor Moore, testified that the cost of this care would amount to $739,991. He testified that the need for such care was 24 hours a day, eight hours of which would require a licensed practical nurse and 16 hours would require unskilled attendants at minimum wages. There is no evidence that any such persons have been hired or that there are any present plans to engage such persons. We think that $739,991 for nursing care is out of line.

The question before this Court is whether this verdict is clearly within the maximum limit of a reasonable range discussed in the case of *Manning v. Altec, Inc.*, 488 F.2d 127, 133 (6th Cir. 1973).

In the opinion of the Court, the verdict in our case is out of line with the verdicts in other cases that have been tried in this and other courts and is excessive. It is beyond the maximum limit of a reasonable range. *Manning v. Altec, Inc., supra.* A reasonable verdict and one in line with other cases that have been tried in this Court would be $1,000,000.

The Court, therefore, grants a remittitur of $250,000, which will reduce the verdict to $1,000,000. The plaintiff shall have 10 days in which to accept the remittitur and if he fails to accept, a new trial is granted.

Order accordingly.