**Mary BROWN, Plaintiff-Appellee,**

v.

**James HAGGARD, Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section.

Jan. 14, 1981.

Certiorari Denied by Supreme Court
April 13, 1981.

John Poteet, Cookeville, for plaintiff-appellee.

C. A. Cameron, Cameron & Madewell, Cookeville, for defendant-appellant.

## OPINION

LEWIS, Judge.

Plaintiff sued defendant in the Circuit Court for Putnam County, Tennessee, and alleged that defendant negligently drove his vehicle into the rear of plaintiff's vehicle causing her to "be injured in her neck, back and generally throughout her spinal column area." She further alleged that her injuries are permanent and that "[s]he has and will suffer great physical pain [and] mental anguish . . . ."

The jury, after deliberation, found the issues in favor of plaintiff and fixed her damages at $24,200.

Defendant's motion for a new trial was overruled and he has appealed, presenting two issues to this Court, as follows:

1.   Was the jury's verdict of $24,200 excessive under the circumstances?

2.   Should the Trial Court have granted the motion for a new trial, or in the alternative should he have suggested a remittitur?

We discuss these issues together.

It is defendant's "insistence that there was no competent proof in the record of a permanent disability on the part of the

plaintiff, but it is obvious that the jury made an award for a permanent injury."

The accident in the case at bar occurred on December 14, 1977. Immediately after the accident, plaintiff complained of a tingling in her arm and some pain in her neck and back. She was very nervous during the night of December 14 and was unable to sleep. She was treated by Dr. Jones, her family physician, on December 15, 1977, for complaints of swelling in her neck and pain in her neck and lower back.

Dr. Jones had been plaintiff's family physician since at least 1974. Plaintiff testified that prior to December 14 she had not suffered from any back pain. Dr. Jones' records show no complaints of neck or back pain prior to December 15, 1977.

Dr. Jones treated plaintiff for the injuries received in this accident several times, the last being in April, 1980, just prior to the trial of this case in May, 1980. Dr. Jones testified, referring to his record of April 13, 1979, as follows:

"Patient continues to have back pain. Says she's no better. Pain comes and goes," and I've made a note on my record here that, "I doubt if the patient ... I doubt if she will ever be any better." Examination at that time is that she had pain on stretching of the sciatic nerves. She's "down in the dumps" and I made a note that I continued the same medication.

A complete review of the record discloses that plaintiff was free of back pain prior to the accident of December 14, 1977; that the injuries that plaintiff complained of were received in the automobile accident; that she continued to have pain from those injuries to the date of trial; and her physician testified that he had "doubt[s] if she will ever be any better." There is material evidence in this record from which the jury could find that plaintiff suffered permanent injuries as a result of the accident.

The evidence is overwhelming that prior to this accident plaintiff was an active, vigorous person. While she had not worked in the public sector for some two years prior to the accident, this was because the plant where she had worked had closed and she had been unable to secure another job. She had, most of her adult life, worked in factories and done farm work. Prior to the accident she and her husband went fishing and camping. They led an active social life. They went dancing and entertained in their home. Jean Watts, one of plaintiff's neighbors, testified that plaintiff was "the sweetheart of the community." Mrs. Watts testified that prior to the accident plaintiff tended her garden, went on numerous day trips, that plaintiff and her husband had fish frys at their home and that she (Mrs. Watts) did not hesitate to bring her friends to plaintiff's home because she knew that plaintiff would welcome them. She further testified that prior to the accident plaintiff had worked stripping tobacco for her brother.

The proof is abundant that the accident caused a total change in plaintiff. Mrs. Watts testified regarding her change, in part, as follows:

A. Well she stays home constantly and I never go down there as much as I did before because I feel like I'm imposing now. I know she doesn't feel very good. We haven't had a fish fry since the wreck. When you go down there ... she used to was real particular about her looks and she would keep her teeth in. You know if you caught her without her teeth, she was embarrassed and now she doesn't even put them in when you go down. You know she just leaves them out. Her dishes—she used to be real particular about her housekeeping and you never saw any dishes in the sink and now there's dishes in the sink and she doesn't come up our house like she did. Since we live so close we'd walk back and forth and she never walks up there and I seldom see her over at Becky and Bill's and we don't eat supper on Sundays any more. We never have our outings so to speak.

The evidence is that while the other neighbors and friends of plaintiff still so-

cialize, plaintiff and her husband, since the accident, do not join with their friends and neighbors.

There is material evidence in the record from which the jury could find that plaintiff continues to suffer back pain.

Defendant's insistence that the verdict of the jury was excessive is not well taken.

The amount of the verdict is primarily for the jury to determine. (Citation omitted.) It is not within the province of an appellate court to substitute its judgment for that of the jury and the Trial Judge. (Citation omitted.)

The general rule is that the verdict of a jury awarding compensatory damages, approved by the Trial Judge, will not be disturbed by the appellate courts where there is material evidence to support it.

*Clark v. Engelberg*, 58 Tenn.App. 721, 728, 436 S.W.2d 465, 468–69 (1968).

There is material evidence to support the verdict of the jury in the case at bar. Prior to the accident on December 14, 1977, plaintiff was a healthy, vigorous person. The evidence is that she suffered from no pain in her back. The accident has caused her to be a totally and drastically different person. She does not join into community affairs and has almost withdrawn from her neighbors. She had suffered and continues to suffer from pain in her lower back from the time of the accident to the date of trial. Testimony from her physician was that he doubted that she would ever be any better.

It is the time-honored rule in this State that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allow all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record,

if there by any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury. (Citations omitted.)

*Crabtree Masonry Co. v. C & R Construction, Inc.*, 575 S.W.2d 4, 5 (Tenn.1978). There is material evidence in this record to support the verdict of the jury.

The judgment of the Trial Court is affirmed. Costs are taxed to defendant, and this cause is remanded to the Trial Court for the enforcement of its judgment and the collection of costs.

TODD, P. J., and CONNER, J., concur.