Carolyn A. OTIS, Plaintiff–Appellant,

v.

**CAMBRIDGE MUTUAL FIRE
INSURANCE COMPANY,**
Defendant–Appellee.

Supreme Court of Tennessee,
at Jackson.

Dec. 7, 1992.

Order on Petition to Rehear
March 29, 1993.

Charles G. Black, Memphis, for plaintiff-appellant.

Fred E. Ivy, Jr., Wilson, McRae, Ivy, Sevier, McTyiere & Strain, Memphis, Clayton H. Farnham, Kenneth A. Hindman, Philip W. Savrin, Drew, Eckl & Farnham, Atlanta, GA, for defendant-appellee.

## OPINION

O'BRIEN, Justice.

Plaintiff, Carolyn Otis, brings this action to recover the proceeds of an insurance policy for fire damage to her home. The suit originated with the mortgagee, Leader Federal Savings and Loan Association, bringing action against Otis and her insurer, Cambridge Mutual Fire Insurance Company, to recover costs incident to the repair of the burned residence. Before trial, Leader Federal settled their claim against Cambridge and entered a voluntary nonsuit as to Ms. Otis. The action then continued upon the cross-complaint filed by Carolyn Otis against Cambridge Mutual.

This cause has been tried before a jury in chancery court on three separate occasions. Both the first and second trials lasted seven days each and both resulted in hung juries. The third trial lasted five days and the jury returned a verdict in favor of the plaintiff in the amount of $67,500; $45,000 for the destruction of the residence and $22,500 for loss of personal property. The chancellor added compounded prejudgment interest to the jury award in the amount of $55,919.25, for a total judgment of $123,-419.25. Cambridge Mutual Fire Insurance Company appealed.

The Court of Appeals reversed the judgment of the trial court and remanded for a new trial based upon abuse of judicial discretion by the chancellor in three areas. (1) The chancellor declined to admit all of the defendant's evidence concerning the plaintiff's alleged prior fraudulent dealings with other insurance companies. (2) The Court of Appeals determined that the chancellor erred by permitting the plaintiff's next door neighbor, a retired fireman, to provide expert testimony as to the cause and origin of the fire. (3) The Court of Appeals found the trial court erred by denying the defendant's request for a jury charge on circumstantial evidence. Cambridge also asserts that the chancellor erred in denying the request for special jury charges on the elements of insurance misrepresentation and on the elements of proof of an intentional burning. The Court of Appeals found no merit to defendant's argument on the denial of these two jury charges.

We granted plaintiff's appeal to review the findings of the Court of Appeals and also to determine whether the calculation and award of interest is proper under the circumstances and whether the chancellor properly denied the defendant's request for set-off.

In October 1983 the home of Carolyn A. Otis was severely damaged by fire. Ms. Otis testified that on the night of the fire, which occurred at approximately 2:00 a.m., she was watching television. Her daughter April and Mr. Henry Cain, who is now her husband, were asleep in their respective bedrooms. Ms. Otis stated that she heard a loud pop and went to the door leading to her carport and there she observed that her automobile was on fire. She ran to wake Mr. Cain who told her to telephone the fire department while he went to wake April.

Mr. Cain testified that he was awakened by Carolyn Otis and told of the fire. He immediately went with Ms. Otis into the kitchen and opened the inner door to the carport and saw that "the car was blazing." He told Ms. Otis to call the fire department and that he would wake April

and get her out of the house. He testified that he observed no fire other than that in the carport.

Witness Randy Parham, a neighbor two houses removed, testified that he and a friend observed smoke coming from the Otis residence. While his friend went to telephone the fire department, Mr. Parham went to the Otises' front door and began knocking. There was no immediate answer at the door, so Mr. Parham picked up a garden bench from the front lawn and threw it through the front bedroom window where April Otis was sleeping. He further testified that while he saw fire coming from the Otises' carport, he did not observe flames in any other part of the house.

April Otis testified she woke up when the bench was thrown through her bedroom window and shortly thereafter Mr. Cain came to make sure she got out of the house. April was eight years old at the time of the fire.

Stanley Ellis, a twenty-five (25) year veteran and Lieutenant with the Memphis Fire Department, lived across the street from the Otis residence. He testified that on the night of the fire he was awakened by the blowing horn on the Otises' car. He ran outdoors and saw the car was "totally involved" in the fire "and the carport was catching." He made sure the Otises were out of the house and then began fighting the fire with a garden hose connected to the front of the burning residence. He stated he saw no flames other than those in the carport area. However, he did testify that when he looked into the front window, the house appeared to be filled with smoke.

Paul Masnica's house is situated immediately next door on the carport side of the Otises' residence. Mr. Masnica is a retired fire captain with 31 years experience with the Memphis Fire Department. He testified that his daughter awakened him and informed him there was a fire next door. He immediately told his daughter to call the fire department and then for her and Mrs. Masnica to get out of the house. On his way out of the front door Mr. Masnica noticed flames outside his kitchen window.

He went to the window and saw that the car next door was on fire. He again started to go outside but before he reached the front door he heard "a loud explosion, a loud bang, a noise." When he arrived outside Mr. Masnica testified he saw flames from the car reaching up to the ceiling of the carport and burning into the attic. Mr. Masnica grabbed his garden hose and joined with Lt. Ellis in an attempt to control the fire. He testified he saw no flames in the house other than the car and carport.

After an investigation into the cause and origin of the fire Cambridge Mutual declined the plaintiff's request for the proceeds of the insurance policy. At trial the defendant asserted two affirmative defenses: first, that the plaintiff intentionally burned, or caused to have burned, the insured property, and second, the plaintiff intentionally misrepresented material facts concerning the claim for the insurance proceeds, thereby voiding the terms of the insurance policy. The plaintiff denied committing arson and accused a former jealous boyfriend of starting the blaze by setting her car on fire while it was parked in her carport. The plaintiff also denied the affirmative defense of intentional misrepresentation.

In order to prove Ms. Otis' intent and motive to commit arson on her residence the defense sought to include, pursuant to Tennessee Rule of Evidence 404(b), evidence of the plaintiff's alleged prior fraudulent dealings with other insurers not party to this cause. T.R.E. 404(b) provides that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." The evidence "may, however, be admissible for other purposes."

The chancellor admitted a large portion of the evidence concerning the plaintiff's dealings with other insurers for impeachment purposes. He declined, however, to allow all of the 51 incidents of alleged fraud sought to be introduced by the defendant. The chancellor determined that, although the evidence might be relevant, it was within his judicial discretion to exclude such on the ground that it would cause confusion to the jury and undue delay and waste of time. Rule 403 of the Tennessee Rules of Evidence states:

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The insurers that the defendant claims were defrauded by the plaintiff have not prosecuted the plaintiff and do not now claim she defrauded them. Nevertheless, the defendant contends that given the difficulty of proving arson such evidence of the plaintiff's alleged past dealings should have been admitted. The defendant claims the exclusion of this evidence deprived it of the ability to show the plaintiff was consciously engaged in a scheme of lying to insurance companies for monetary gain.

We disagree that such evidence must necessarily be admitted. An inquiry into character is not rejected so often because it is irrelevant; "on the contrary it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948). This legal maxim applies in civil cases; litigants must be accountable only for the cause of action brought against them or affirmative defenses asserted.

■ In Tennessee admissibility of evidence is within the sound discretion of the trial judge. When arriving at a determination to admit or exclude even that evidence which is considered relevant trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion. *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832 (Tenn.App. 1980); Tennessee Rules of Evidence 401; *Austin v. City of Memphis*, 684 S.W.2d 624 (Tenn.App.1984); *Inman v. Aluminum*

*Co. of America*, 697 S.W.2d 350 (Tenn.App. 1985).

■ We consider the rule stated in *McCormack v. Riley*, 576 S.W.2d 358, 360 (Tenn.App.1978) to be applicable here,

Not all logically relevant evidence is admissible. Thus evidence which would advance the inquiry but would also inflame or unduly distract the jury or require an undeserved expenditure of judicial time or unfairly surprise the opponent may not be admissible. *See McCormick on Evidence* § 185 (2d ed. 1972). The probative weight of evidence must be balanced against those attendant costs in determining that evidence should be admitted.

We conclude that the chancellor did not abuse his judicial discretion by excluding the evidence of plaintiff's alleged prior fraudulent dealings with insurance companies not party to this cause.

The second issue for review requires a determination on whether the chancellor erred in permitting the plaintiff's next door neighbor, a retired captain who served with the Memphis Fire Department for 31 years, to testify as an expert about the cause and origin of the fire.

The defendant asserts that, despite Mr. Masnica's thirty-one years as a fire fighter, evidence shows he lacked the expertise and personal knowledge to testify as an expert. The defendant also asserts that Mr. Masnica was at the fire scene by chance, only as a layman, and in no official capacity. The defendant additionally points out that Mr. Masnica did not perform his own scientific investigation into the cause of the fire.

The chancellor and counsel conducted a *voir dire* examination of Mr. Masnica in which he testified that, although trained primarily as a fire fighter and not as an investigator, he was occasionally called upon by superiors to give an opinion as to the cause and origin of the fires he helped fight. Mr. Masnica also testified that when superiors arrived on a fire scene he would be required to report to them on where the fire started, what caused it and what materials were being used to fight the fire. Tennessee Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge skill, experience, training, or education may testify in the form of an opinion or otherwise.

■ To give expert testimony, one must be particularly skilled, learned or experienced in a science, art, trade, business, profession or vocation. The expert must possess a thorough knowledge upon which he testifies that is not within the general knowledge and experience of the average person. *Kinley v. Tennessee State Mutual Insurance Co., Inc.*, 620 S.W.2d 79, 81 (Tenn.1981). The trial judge has wide discretion in the matter of the qualifications of expert witnesses. *Blalock v. Clairborne*, 775 S.W.2d 363 (Tenn.App.1989), citing *Stokes v. Leung*, 651 S.W.2d 704, 706 (Tenn.App.1982).

It is obvious that, however an "expert" may be defined, he should, in order to give his opinion as an expert, have some special as well as practical acquaintance with the immediate line of inquiry. Where that line between an expert and a non-expert should be drawn must, under the varying conditions of cases and their environments, necessarily be laid down by *judex feri;* and this court will not reverse on account of the judgment of the lower court as to whether a witness offered in it is an expert, unless we can clearly see that he was in error in respect to the qualifications of the witness, and that his error was injurious. *Benson v. Fowler*, 306 S.W.2d 49, 63 (Tenn.App. 1957), *cert. denied* 1957; citing *Powers v. McKenzie*, 90 Tenn. 167, 181, 16 S.W. 559, 562 (1891).

Two experts testified at trial, the retired captain/next-door neighbor, Paul Masnica, for the plaintiff and independent fire investigator, Rollin Kennedy, for the defendant.

Mr. Masnica's testimony contained much the same information he would have been called upon to give superiors arriving after him at the scene of a fire. He stated that it was his opinion the fire began inside the car and spread to the carport. He testified that, although he did not detect the smell

of accelerants at the time, "evidently some-one had thrown something inside the car to get it started to burn." According to Mr. Masnica, the fire then spread to the rest of the house through the attic. He also testi-fied that it is possible the spread of the fire was facilitated when Mr. Parham threw the lawn bench through April's front bedroom window allowing oxygen to feed the fire on its path through the attic.

Independent investigator Rollin Kennedy investigated the residence at the request of the defendant six days after the fire. He stated that he did not test for accelerants because of the length of time between the fire and his investigation. He was, howev-er, able to deduce by the burn patterns and soot deposits that there were two areas of fire origin. One origin area was the car and the carport at the north end of the house. This fire began first, burned the longest and was the most intense. The second area of origin, according to Mr. Kennedy, was the sewing room at the south end of the house. Mr. Kennedy testi-fied that it was his opinion the fires were intentionally set and that the fire in the sewing room was not caused by the fire in the carport traveling through the attic. Photographs taken of the burned residence supporting his testimony were made exhib-its at trial.

Captain Wallace of the Memphis Fire Marshal's Office testified concerning the contents of the Fire Marshal's investigative report. He stated that according to the report the fire was considered an incendi-ary blaze, meaning it was intentionally set. Reading from the report, Captain Wallace stated, "Fire traveled up the carport wall to the attic and burned north to south end [the carport is on the north end of the home] of the dwelling causing heavy dam-age to the entire dwelling. Heavy damage to the sewing room on the south end of the building, which seemed to be a separate fire which occurred at the north end of the building. Samples were taken from the sewing room and interior of the automo-bile." No evidence of accelerants were found in the samples.

Based on Mr. Masnica's thirty-one years experience as a fire fighter and the fact that during his long career he was called upon by superiors to give opinions as to the cause and origin of fires, the chan-cellor ruled that Mr. Masnica would be permitted to testify as an expert on the cause and origin of the Otis fire. In the general charge to the jury the chancellor stated:

The witness, who has special knowledge, skill or experience or training or edu-cation in a particular science, profession or occupation may give an opinion in the matter in which he is skilled. In terms of the weight to be given such an opin-ion, you should consider the qualifica-tions and the credibility of the expert as well as the reasons, the facts and any other matters upon which any opinion is based. You're not bound by any such opinion. Give it the weight, if any, you think it is entitled.

There was contradictory evidence about the origin and nature of the fire in the sewing room in the house. Mr. Masnica's testimony was confirmed to a degree by the Fire Marshal's Investigative Report through the testimony of Captain Wallace. We agree with the chancellor that Mr. Mas-nica's extensive background qualified him to give an opinion as to the cause and origin of the fire. Additionally, his arrival upon the scene, at or very near the start of the blaze, gave him a perspective which could be lacking to an after-the-fact investi-gator. We find no abuse of discretion by the chancellor in allowing Mr. Masnica to give his opinion.

The third issue for review is whether the trial court erred in denying three of the defendant's requested jury charges. The charges concerned insurance misrepresen-tation, the elements of proof of intentional burning, and circumstantial evidence and the inferences which may be drawn there-from.

The defendant's requested jury charge on misrepresentation reads as follows:

I charge you that if a false statement was knowingly made by the plaintiff, Carolyn A. Otis, with regard to a materi-

al matter, the intent to defraud the defendant Cambridge Mutual by Carolyn A. Otis may be inferred by you. Furthermore, if you find that Carolyn A. Otis made any false statements, her knowledge of the falsity of those statements, need not be absolute to deny her the proceeds of the insurance policy. It is sufficient if you find that Carolyn A. Otis swore with disregard to the truth or swore to matters as true within her knowledge when in fact she knew little or nothing about them.

The chancellor's general charge given to the jury contained the following concerning the issue of misrepresentation.

I charge you that [under] Cambridge Mutual's policy that the plaintiff Carolyn A. Otis may not collect insurance proceeds if she has willfully concealed or misrepresented any facts or circumstances concerning the fire.

■■■ The defendant contends that the charge as given constitutes error because it does not speak to the requisite degree of the plaintiff's knowledge or that her deceit could be inferred. We do not share defendant's view. Where the court correctly charges the law applicable to the case, it is not error to deny a special request that embodies a theory of a party if the court charges in general terms and with clearness sound propositions of law which would guide the jury in reaching a correct decision in the case. *See St. Louis I.M. & S. Ry. Co. v. Hatch*, 116 Tenn. 580, 593, 94 S.W. 671, 674 (1906). The correct rule is stated in *Mitchell v. Smith*, 779 S.W.2d 384, 390 (Tenn.App.1989):

Trial courts should give a requested instruction if it satisfies three requirements: (1) it is supported by the evidence, (2) it embodies the party's theory, (3) it is a correct statement of the law. *Hayes v. Gill*, 216 Tenn. 39, 42–43, 390 S.W.2d 213, 214 (1965); *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 837 (Tenn.Ct.App.1980); *Tallent v. Fox*, 24 Tenn.App. 96, 114–15, 141 S.W.2d 485, 497 (1940). However, they need not give a special instruction whose substance is already covered in the general charge.

*Jack M. Bass & Co. v. Parker*, 208 Tenn. 38, 49, 343 S.W.2d 879, 884 (1961); *Austin v. City of Memphis*, 684 S.W.2d 624, 636 (Tenn.Ct.App.1984).

■■■ The defendant also contends the chancellor erred by refusing to charge a portion of Requested Charge No. 7, which stated:

Circumstantial evidence of intentional burning *can be shown* by proof of intentional burning, motive to commit intentional burning, opportunity on the part of Carolyn A. Otis to burn the property, the financial condition of Carolyn A. Otis, and unexplained circumstances surrounding the fire. (emphasis added).

The Court of Appeals found the requested charge to be incorrectly stated and that the chancellor did not err by refusing to give the requested charge. We agree. A requested charge must be strictly accurate throughout. *Tallent v. Fox*, 24 Tenn.App. 96, 141 S.W.2d 485 (1940). The charge states that "circumstantial evidence of intentional burning can be shown by proof of intentional burning ..." This is not a correct statement. Circumstantial evidence is not shown, but is introduced to show.

The Court of Appeals held that the chancellor did err by denying the defendant's request to charge on circumstantial evidence and the inferences which may be drawn therefrom. The charge may be found in T.P.I.—Civil 2.01:

Evidence may be either direct or circumstantial. It is direct evidence if it proves a fact, or group of facts, without an inference, and which in itself, if true, conclusively establishes that fact. It is circumstantial evidence if it proves a fact from which an inference of the existence of another fact may be drawn.

An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence.

The law makes no distinction between direct and circumstantial evidence as to the degree of proof required; each is accepted as a reasonable method of proof and each is respected for such convincing force as it may carry.

The fact or facts upon which it is sought to base an inference must be proved and not left to rest in conjecture, and when proved it must appear that the inference drawn is more probable than any other explanation.

While we agree with the Court of Appeals that the requested instruction might well have been given, we do not agree with their position that the error was not harmless. Under Tennessee law the jury charge will be viewed in its entirety and considered as a whole in order to determine whether the trial judge committed prejudicial error. (citations omitted). *Abbott v. American Honda Motor Co., Inc.* 682 S.W.2d 206 (Tenn.App.1984). The charge will not be invalidated as long as it fairly defines the legal issues involved in the case and does not mislead the jury. *Grissom v. Metropolitan Government of Nashville*, 817 S.W.2d 679, 685 (Tenn.App. 1991).

In *DeRossett v. Malone*, 34 Tenn. App. 451, 239 S.W.2d 366, 378 (1950), the court had before it the question of failure to grant a jury instruction. It was held that it was not sufficient that the failure to grant the request may have affected the result. It must affirmatively appear that it did in fact do so. Of course the issue in *DeRossett* was determined under the requirements of T.C.A. § 27–1–117, the statute since replaced by T.R.A.P. 36(b) which provides that a final judgment from which relief is available shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment. We are of the opinion that the Court of Appeals reference to *State v. Caldwell*, 671 S.W.2d 459 (Tenn.1984) was inappropriate on this issue. Criminal cases by their very nature, and the measure of proof required, must adhere to different standards than those applicable in civil cases. We have also examined those cases cited by defendant to support its argument and do not find them to be of any great assistance in deciding this matter. It is true, as argued by defendant, that there was a good deal of circumstantial evidence presented in this case. However, it is apparent from a reading of the record that this evidence was as beneficial to one side as to the other. The pendulum swings in both directions. The oversight in failing to give the circumstantial evidence instruction was no more injurious to one than to the other. We do not think this failure affected the judgment.

The next issue is whether the chancellor erred by granting the plaintiff's motion to add 10% prejudgment compound interest to the jury award. The defendant contends the award is improper or, in the alternative, if the award is proper, the calculation of compound interest is in contravention of the allowable statutory cap.

T.C.A. 47–14–123 provides that prejudgment interest may be awarded as an element of damages "in accordance with the principles of equity at any rate not in excess of the maximum effective rate of ten percent (10%) per annum." *See Schoen v. J.C. Bradford & Co.*, 667 S.W.2d 97 (Tenn.App.1984), The award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed upon appellate review unless the record reveals a manifest and palpable abuse of discretion. *See Engert v. Peerless Insurance Co.*, 53 Tenn.App. 310, 382 S.W.2d 541 (1964); *B.F. Myers & Son of Goodlettsville, Inc. v. Evans*, 612 S.W.2d 912 (Tenn.App.1980); *In re Estate of Cooper*, 689 S.W.2d 870 (Tenn.App.1985); *Teague Brothers, Inc. v. Martin & Bayley, Inc.*, 750 S.W.2d 152 (Tenn.App.1987). The award of prejudgment interest as an element of damages is not considered a penalty imposed upon the defendant, but is allowed in accordance with the principles of equity. *In re Estate of Davis*, 719 S.W.2d 526 (Tenn.App.1986). This Court finds no error in the award of prejudgment interest.

However, we are in disagreement with the trial court's use of compound interest in calculating the award. When interpreting statutes it is fundamental that the legislative intent be determined from the plain language contained therein and read in the context of the entire statute, without any forced or subtle construction that would extend or limit the meaning

of the statute. *National Gas Distributors, Inc. v. State*, 804 S.W.2d 66 (Tenn. 1991). The language of T.C.A. 47–14–123 provides for the award of prejudgment interest based upon equitable principles. By the plain meaning of its terms the statute limits awards of equitably awarded prejudgment interest to 10% per annum per year. To interpret the statute to mean compound interest is authorized constitutes a forced construction that impermissibly extends the intent of the legislature. The award of prejudgment interest should be calculated at simple interest with a 10% per annum cap.

The final issue for review is whether the chancellor erred by refusing to set-off the amount of the jury award by the amount the defendant paid to the plaintiff's mortgagee to cover the remainder owed on the residence. This court agrees with the chancellor's judgment. We find no basis to grant the defendant's request.

In summary, the judgment of the Court of Appeals is reversed and the judgment of the trial court is reinstated. The cause is remanded for re-calculation of the award of prejudgment interest using the simple interest method. Costs of this appeal are taxed against the defendant Cambridge Mutual Fire Insurance Company.

REID, C.J., and DROWOTA, DAUGHERTY and ANDERSON, JJ., concur.

## ORDER ON PETITION TO REHEAR

PER CURIAM.

Defendant, Appellee has filed a respectful petition to rehear which the Court has considered and does hereby deny, with the exception of the claim for set off against the judgment of amounts purportedly paid to mortgagees against recovery for damages to structures.

So far as the Court has been able to determine the record includes a consent order of dismissal between Leader Federal Savings & Loan and Cambridge Mutual Insurance Company. The order specifically includes the provision that "The dismissal with prejudice embraced in this Order has no effect on the claim or claims of Richard Otis and Carolyn A. Otis embraced in this cause." The order is signed by the trial judge and is approved by counsel for petitioner.

The motion for new trial charges error to the trial court in failing to set off against Plaintiff's recovery the sum of $12,500.00 paid by petitioner to Leader Federal Savings and Loan Association.

The answer to the motion for new trial denies there was any agreement for set off between plaintiff, Carolyn Otis and Cambridge Insurance Company.

 It is the duty of the parties to make up the record for consideration on appellate review. Apparently any payment made by petitioner to Leader Federal Savings and Loan was made after the mortgage was foreclosed. However, since this case must be remanded to the trial court, if, on remand, petitioner can establish that it paid to Leader Federal Savings and Loan Association any indebtedness owed by Carolyn Otis to that agency it would be entitled to the requested set off on the judgment.

The case is remanded to the trial court for any further proceedings required.

Costs are assessed against Cambridge Mutual Fire Insurance Company.