# IN THE COURT OF APPEALS OF TENNESSEE

| | |
|---|---|
| MIKE T. HUNTER, | ) C/A NO. 03A01-9606-CV-00207 |
| Plaintiff-Appellee, | ) |
| v. | ) |
| DAMIAN V. BURKE; and | ) |
| DONNIE WEAR and JOE GUFFEY, | ) APPEAL AS OF RIGHT FROM THE |
| individually and doing business | ) BRADLEY COUNTY CIRCUIT COURT |
| as J&D AUTO SALES, | ) |
| Defendants-Appellants, | ) |
| and | ) |
| EDWIN THOMPSON, also known | ) |
| as EDWARD THOMPSON, | ) |
| | ) HONORABLE JOHN B. HAGLER, JR., |
| Defendant. | ) JUDGE |

For Appellant Burke                    For Appellee

GERARD M. SICILIANO                    ROGER E. JENNE
Luther-Anderson, P.L.L.P.              Jenne, Scott & Bryant
Chattanooga, Tennessee                 Cleveland, Tennessee


For Appellants Wear and Guffey

LARRY B. NOLEN
Athens, Tennessee


# O P I N I O N

This is a suit for damages arising out of personal injuries sustained by Mike T. Hunter (Hunter) when he was hit by an automobile driven by the defendant Damian V. Burke (Burke). Burke's vehicle was owned by the defendants Donnie Wear (Wear) and Joe Guffey (Guffey). The trial court directed a verdict against all of the appealing defendants.[1] The jury then awarded Hunter compensatory damages of $270,000. These defendants appealed, raising the following questions for our resolution:

1. Did the trial court err in directing a verdict against Wear and Guffey on the plaintiff's theory of vicarious liability?

2. Did the trial court abuse its discretion when it admitted into evidence a transcript of Burke's taped confession?

3. Did the trial court err when it instructed the jury regarding the effect of TennCare payments for medical services rendered to Hunter?

4. Did the trial court err in failing to charge the jury as requested by Wear and Guffey regarding independent intervening cause, agency, and the rebuttable presumption of T.C.A. § 55-10-311(a)?

5. Did the trial court err in failing to charge the jury with respect to comparative fault?

6. Did the trial court submit an erroneous verdict form to the jury?

7. Did the trial court err when it approved and entered a judgment that does not include plaintiff's abandonment of his negligent entrustment theory?

---

[1]Edwin Thompson, a passenger in the vehicle that struck Hunter, was named as a defendant in the complaint. The jury found that he was not responsible for the accident. The trial court's judgment with respect to Thompson was not appealed.

8.   Is the jury's verdict excessive and the result of passion, prejudice, and caprice, so as to warrant a new trial or remittitur?

## I.    Facts

On the afternoon of June 3, 1994, Burke, who was then 18 years old, along with his friend, Edwin Thompson (Thompson), went to J&D Auto Sales, a used car lot owned and operated by Wear and Guffey.  Earlier that day, Burke and Thompson had been at Burke's house with two or three other individuals, smoking marijuana and drinking beer.  There is evidence that Burke approached Guffey and asked to drive a 1971 Chevrolet Malibu. Guffey agreed.  Burke and Thompson drove off the lot with the latter behind the wheel.  Guffey did not accompany them.

After traveling a short distance, Thompson apparently realized that he was too impaired to drive.  He then asked Burke to drive.  Burke agreed, despite the fact that he too was under the influence of marijuana and alcohol.

Burke drove a few blocks, swerved into the oncoming lane of traffic, and struck Hunter, who was riding his bicycle. Burke stopped the car, and he and Thompson fled the scene.  They were apprehended by the police shortly thereafter.  Burke gave a statement admitting that he caused the accident.

As a result of the accident, Hunter sustained two compound fractures of his left leg, including a fracture of the femur.  He was taken to the emergency room, where he was treated for his injuries.  Treatment included the insertion of a metal

rod in his leg. At the time of trial, Hunter had incurred medical bills in excess of $24,000. He spent a week in the hospital, after which he recuperated at home for three months. While at home, he used crutches and a walker to get around. Hunter continues to experience pain and instability in his left knee. His physician assessed his permanent impairment at 30% to the leg, which he extrapolated to 12% to the body as a whole.

Hunter, age 23 at the time, missed significant time from work following the accident. He had earlier been diagnosed as suffering from mild mental retardation, and at the time of the accident, he was employed by a furniture manufacturer, earning minimum wage. His duties included the lifting of couches and chairs off a conveyor belt. After the accident, he worked for approximately one week at another job, until he had to quit because of a wrist injury, unrelated to the accident. Since then, he has had trouble finding employment. Hunter testified that he suffers continuing pain in his leg and that he has experienced difficulty riding his bike, which, since he has no driver's licence, is his primary means of transportation. He also has experienced pain in his knee when trying to squat or climb stairs and ladders.

Hunter subsequently brought suit against Burke, Thompson, Wear, and Guffey. At trial, Burke admitted responsibility for the accident and the trial court granted Hunter's motion for a directed verdict against him on the issue

of liability. It granted the same motion as to Wear and Guffey, finding them vicariously liable for Burke's actions, due to the fact that Burke had been test-driving a vehicle owned by them at the time of the accident. During the court's jury instructions, Hunter moved for a voluntary nonsuit on the issue of punitive damages. The trial court granted the motion and consequently submitted the case to the jury only on the issues of compensatory damages, and whether Thompson was liable for negligently entrusting the vehicle to Burke. The jury found that Thompson was not liable. It awarded compensatory damages of $270,000 against the remaining three defendants. Expressly approving of the jury's verdict, the trial judge denied the defendants' motions for a new trial or remittitur.

## II. Directed Verdict Against Wear and Guffey

Wear and Guffey argue that the trial court erred in directing a verdict against them. They contend that reasonable minds could have concluded that Burke was not their agent.

Our standard of review in a case such as this is well-settled. We must take the strongest legitimate view of the evidence in favor of the nonmoving party. We sustain a grant of a directed verdict only if we determine that reasonable minds could not differ as to the conclusions to be drawn from the evidence. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Williams v. Brown*, 860 S.W.2d 854, 857 (Tenn. 1993). If there is

7

any doubt regarding the proper conclusions to be drawn from the evidence, the motion for directed verdict must be denied. *Eaton*, 891 S.W.2d at 590.

The relevant statute, T.C.A. § 55-10-311, provides, in pertinent part, that

> [i]n all actions for injury to persons and/or to property caused by the negligent operation or use of any automobile, auto truck, motorcycle, or other motor propelled vehicle within this state, proof of ownership of such vehicle shall be prima facie evidence that the vehicle at the time of the cause of action sued on was being operated and used with authority, consent and knowledge of the owner in the very transaction out of which the injury or cause of action arose, and such proof of ownership likewise shall be prima facie evidence that the vehicle was then and there being operated by the owner, or by the owner's servant, for the owner's use and benefit and within the course and scope of the servant's employment. *The prima facie evidence rules of the preceding sentence shall also apply in cases of the negligent operation of a vehicle being test-driven by a prospective purchaser with the knowledge and consent of the seller or the seller's agent whether or not the seller or the seller's agent is present in the vehicle at the time of the alleged negligent operation.*

T.C.A. § 55-10-311(a) (emphasis added). The evidence clearly shows that the vehicle in question was on the lot of Wear and Guffey for the purpose of sale. No one disputes this. Furthermore, the evidence clearly demonstrates that Burke was a "prospective purchaser" who was test-driving the vehicle. Wear testified that Guffey told him that the car had been taken out

8

for a test drive. Guffey testified that he and Wear owned the car, that it was for sale on their lot, and that it was taken for a test drive by either Burke or Thompson. A prima facie case of agency thus arose under the statute. *Id.*

The prima facie case of agency can be rebutted by "credible proof that the driver was in fact operating the vehicle without authority of the owner." *Ferguson v. Tomerlin*, 656 S.W.2d 378, 381-82 (Tenn. App. 1983); however, once proof of ownership has been established, the burden of overcoming the prima facie case of a master-servant relationship rests upon the owner of the vehicle. *Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 387 (Tenn. 1986).

Wear and Guffey contend that there are conflicts in the evidence that render this case inappropriate for a directed verdict; however, the question is not whether there is conflicting evidence, but whether Wear and Guffey presented any credible evidence to rebut the prima facie case established under T.C.A. § 55-10-311(a). For example, in this case, these defendants could have accomplished this by proof showing that they did not own the car; that Burke took the car without their knowledge or consent; or that Burke did not take the car for a test drive as a prospective purchaser, but for some hidden purpose, such as "joyriding." *See Hamrick*, 708 S.W.2d at 387.

9

The record reveals that Wear and Guffey failed to carry their burden of rebutting the prima facie case of agency. There is nothing about the acquisition of the car from Guffey; the period of time Burke had the car in his possession; the circumstances of the accident; or the contents of Burke's confession, to suggest, even by way of a reasonable inference, that Burke was not a prospective purchaser. If anything, the testimony of Wear and Guffey reinforces the fact that Burke was a prospective purchaser who was test-driving the vehicle with their knowledge and consent. *See* T.C.A. § 55-10-311(a). Thus, we believe that only one conclusion may reasonably be drawn from the evidence, *Eaton*, 891 S.W.2d at 590--that Wear and Guffey are vicariously liable for Burke's conduct because he was test-driving a vehicle owned by them. We find and hold that the trial judge correctly directed a verdict against Wear and Guffey as to the plaintiff's theory of vicarious liability.

## III. Burke's Confession

Burke contends that the trial court abused its discretion when it admitted into evidence a transcript of the confession he gave to the police shortly after the accident. In the statement, Burke essentially acknowledged that he was driving the car when it struck Hunter, and that the accident occurred as a result of the fact he was under the influence of drugs and alcohol at the time. Burke argues that this confession was irrelevant, prejudicial, and cumulative, and that it should have

10

been excluded in light of the fact that he had previously stipulated to liability.

The admissibility of evidence lies within the sound discretion of the trial judge. It follows that trial courts are accorded a wide degree of latitude, and their decisions as to admissibility will only be disturbed by us when that discretion has been abused. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992).

We do not agree with Burke's contention that this evidence was irrelevant. On the contrary, the statement is clearly evidence as to how Burke obtained the vehicle from Wear and Guffey; of Thompson's relinquishment of control of the car to Burke; and of exactly how the accident occurred. Furthermore, we do not believe, as argued by the defendants, that the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice", as that concept is embodied in Rule 403, Tenn.R.Evid. It is true that proof as to stipulated matters is generally not necessary; however, given the fact that portions of Burke's confession were relevant to other aspects of this case, and given the absence of a showing that the introduction of cumulative portions of the confession had the "highly prejudicial" effect suggested by Burke, we do not believe that the admission of these cumulative matters "more probably than not affected the judgment". Rule 36(b), T.R.A.P. Thus, we find that

11

even if portions of the confession were cumulative, any error in the admission of these portions was harmless.

## IV.  Jury Instructions

Burke, Wear and Guffey also claim that the trial court erred in its instructions to the jury.

In reviewing a jury charge, we consider the charge as a whole to determine whether prejudicial error has been committed. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992); *In re Estate of Elam*, 738 S.W.2d 169, 174 (Tenn. 1987). The challenged portion of the charge must be viewed in context. *Id.* The charge will not be invalidated so long as it fairly defines the legal issues involved in the case and does not mislead the jury. *Otis*, 850 S.W.2d at 446; *Grissom v. Metropolitan Gov't of Nashville*, 817 S.W.2d 679, 685 (Tenn. App. 1991). Accordingly, jury instructions are not measured against a standard of perfection. *Id.*

Burke, Wear and Guffey contend that the trial judge committed reversible error when he instructed the jury on the significance of TennCare payments. After overhearing a juror inquire about such payments, the trial judge charged the jury as follows:

12

> You may have noticed that some of the medical bills introduced into the evidence have been paid by TennCare or some other healthcare provider. This is of no consequence and should not be considered by you for two reasons. First, the plaintiff is entitled to recover from the defendant any medical expenses incurred regardless of whether paid by another. Secondly, under our law TennCare or a similar healthcare provider is subrogated to Mr. Hunter's rights of recovery. This means that Mr. Hunter will be required by law to repay TennCare any amounts they have paid from any recovery in this case.

The defendants contend that this instruction was "invited" by the failure of Hunter's counsel to redact all references to TennCare before introducing Hunter's medical bills into evidence, and that, as a result of the instruction, the jury rendered an inflated verdict. The record reveals, however, that the defendants made no objection to the admission of the medical bills as offered into evidence. Given the fact that a juror was overheard to question the effect of TennCare payments, we believe the trial court's instructions were proper under the circumstances of this case. Furthermore, the instruction correctly sets forth the law regarding the State's subrogation interests. *See* T.C.A. § 71-5-117. Therefore, we conclude that the trial court's instruction to the jury regarding the effect of TennCare payments, when viewed in context, was not such as to mislead the jury or incorrectly define the legal issues at hand. *Otis*, 850 S.W.2d at 446; *Elam*, 738 S.W.2d at 174; and *Grissom*, 817 S.W.2d at 685.

13

Wear and Guffey next contend that the trial court erred in failing to grant their requests for various special jury instructions. The first such request, according to these defendants, was for an instruction regarding "independent intervening cause." We note that it is generally the threshold duty of a party alleging error in the omission of a specific instruction to demonstrate that a correct and complete request for such instruction was submitted to, and refused by, the trial judge. *England v. Burns Stone Co.*, 874 S.W.2d 32, 37 (Tenn. App. 1993). In the instant case, the requested instruction is not in the record before us, nor is the issue adequately briefed by Wear and Guffey. Thus, we cannot consider this issue. *Id.*

As their next issue, Wear and Guffey cite the trial court's failure to instruct the jury as they requested regarding the existence of an agency relationship. The requested instruction essentially states that if the jury finds that Burke and Thompson were not agents of Wear and Guffey at the time of the accident, then the jury must find that Wear and Guffey are not liable. However, since the trial court first determined that such an agency relationship did exist and then correctly directed a verdict accordingly, its refusal to give this charge was logical and proper. We find this issue to be moot, in view of the trial court's disposition of the liability aspect of the case.

14

Wear and Guffey also claim that the trial court erred in refusing to give their requested jury instruction regarding the rebuttable presumption of T.C.A. § 55-10-311(a). The proposed instruction states that if the jury determines that neither Wear nor Guffey were present in the vehicle at the time of the accident, it must find that the presumption has disappeared and that Wear and Guffey are not liable. In view of our holding regarding the trial court's grant of a directed verdict, this issue is also moot.[2]

As their final issue concerning the jury charge, Wear and Guffey assert that the trial judge committed prejudicial error by failing and refusing to instruct the jury regarding comparative fault. In connection with this issue, they also contend that the verdict form submitted to the jury was improper, in that it did not provide for the allocation of fault among all defendants.

We do not believe the failure to instruct the jury as to comparative fault is reversible error in this case. Wear and Guffey's liability was predicated solely upon agency. Since the trial court directed a verdict finding Wear and Guffey vicariously liable for Burke's actions, the doctrine of

[2]We would point out in passing that the requested instruction is an incorrect statement of the law. T.C.A. § 55-10-311(a) provides that the prima facie case of agency arises regardless of whether the seller is present in the vehicle at the time of the accident. We know of no authority in this state to support the proposition that evidence of the seller's absence from the vehicle is sufficient to rebut the prima facie case of agency.

comparative fault was not applicable as among those three defendants. As between Burke and Thompson, any error in failing to instruct on the subject of comparative fault was harmless in view of the fact the jury found that Thompson was not guilty of any negligence.

## V. The Jury's Verdict

The final issue,[3] common to all defendants, involves the question of whether the jury's verdict was excessive, indicative of passion, prejudice, and caprice, and unsupported by the evidence.

In personal injury cases, the amount of damages to be awarded is primarily for the jury. *Brown v. Null*, 863 S.W.2d 425, 430 (Tenn. App. 1993); *Clark v. Engelberg*, 436 S.W.2d 465, 468 (Tenn. App. 1968). It is not within the appellate court's province to substitute its judgment for that of the jury. *Id.* Furthermore, when the trial judge has approved a verdict, as in this case, our review is subject to the rule that if there is any material evidence to support the jury's award, it should not be disturbed. *E.g., Ellis v. White Freightliner Corp.*, 603 S.W.2d 125, 129 (Tenn. 1980); *Benson v. Tennessee Valley Elec. Coop.*,

---

[3]In their statement of issues, Wear and Guffey also claim that the trial court erred in "approving and entering a judgment that does not include [Hunter's] abandonment of his negligent entrustment theory." However, since they do not discuss this issue in their brief, it is considered waived. Rule 27(a)(7), T.R.A.P.; *Dixie Sav. Stores, Inc. v. Turner*, 767 S.W.2d 408, 411 (Tenn. App. 1988).

868 S.W.2d 630, 640 (Tenn. App. 1993); *Coyle v. Prieto*, 822 S.W.2d 596, 601 (Tenn. App. 1991); *Cary v. Arrowsmith*, 777 S.W.2d 8, 23 (Tenn. App. 1989). As stated in *Ellis*,

> [e]ach case must depend upon its own facts and the test to be applied by us is not what amount the members of the court would have awarded had they been on the jury, or what they, as an appellate court, think should have been awarded, but whether the verdict is patently excessive.

*Ellis*, 603 S.W.2d at 129.

We have concluded that the record contains material evidence to support the jury's award of $270,000. The verdict is supported by, among other things, evidence of the following: the severity of Hunter's injury; his pain and suffering; the degree of permanent impairment to his leg; and the impact of the injury upon his ability to work and move about. At the time of trial, Hunter had a life expectancy of some 47 years. According to his treating physician, Hunter will experience difficulty performing work that requires certain types of physical exertion, an obvious aspect of the type of employment to which he is best suited, given his mental limitations. It is well-settled that a negligent party takes a plaintiff as the defendant finds him or her, and the injured plaintiff is entitled to recover all damages proximately caused by the acts of the responsible party. *Haws v. Bullock*, 592 S.W.2d 588, 591 (Tenn. App. 1979); *Fuller v. Speight*, 571 S.W.2d 840, 841 (Tenn. App. 1978). Here, the

17

defendants' negligent conduct caused significant injury and impairment to an individual who is mentally retarded--one who must rely upon his physical skills for future employment.

We find that the jury's verdict is supported by material evidence, *Ellis*, 603 S.W.2d at 129, and we find no indication that it was influenced by passion, prejudice, or caprice. We therefore hold that the verdict was not excessive, and we decline to set it aside or grant a remittitur.

While not raised in his Statement of the Issues as required by Rule 27(a)(4), T.R.A.P., Burke suggests in the argument section of his brief that Hunter's claim for punitive damages, withdrawn during the court's charge to the jury, allowed the introduction of "considerable, and ultimately irrelevant, proof concerning [his] 'recklessness' and gross misconduct." He argues that this evidence inflamed the jury and prompted an excessive award. We disagree. As we have previously indicated, we find material evidence to support the jury's award of compensatory damages.

For the foregoing reasons, the judgment of the trial court is, in all respects, affirmed. Costs on appeal are assessed against the appellants and their sureties. This case is remanded to the trial court for enforcement of its judgment and collection of costs assessed there, pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M Goddard, P.J.


_____
William H. Inman, Sr.J.