IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2009

## STATE OF TENNESSEE v. CHARLES MANDEL MOSS, ALIAS CHARLES MANDELL, ALIAS POOKIE DOO

**Appeal from the Criminal Court for Hamilton County**
**No. 258607      Barry A. Steelman, Judge**

_____

**No. E2008-02632-CCA-R3-CD - Filed May 17, 2010**

_____

The Defendant, Charles Mandel Moss, alias Charles Mandell, alias Pookie Doo, was convicted of violation of the motor vehicle habitual offenders act, a Class E felony; possession of marijuana, a Class A misdemeanor; evading arrest, a Class A misdemeanor; violation of the seatbelt law, a Class C misdemeanor; and violation of the open container law, a Class C misdemeanor. The Defendant was sentenced to serve four years for violation of the motor vehicle habitual offenders act, eleven months and twenty-nine days each for possession of marijuana and evading arrest, and thirty days each for violation of the open container law and violation of the seatbelt law. The court imposed partially consecutive sentences that resulted in an effective sentence of four years, eleven months, and twenty-nine days. The Defendant appeals, arguing that (1) the convicting evidence is insufficient to support the conviction for violation of the motor vehicle habitual offenders act, and (2) the trial court erred in admitting evidence related to the Defendant's previous arrests. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Donna Robinson Miller, Chattanooga, Tennessee, (on appeal); Jerrold J. White, Chattanooa, Tennessee (at trial), for the appellant, Charles Mandel Moss, alias Charles Mandell, alias Pookie Doo.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; William H. Cox, III, District Attorney General; and Jason L. Thomas and C. Matthew Rogers, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

At the trial, Lajuan Elston, an employee of the Hamilton County Criminal Court Clerk's office, testified that according to the records of the clerk's office, a person named Charles Mandel Moss was declared a motor vehicle habitual offender on December 7, 2001. She acknowledged that human error was possible in the process but stated that the clerk's office made efforts to be accurate. She said that the records reflected that the Defendant was served with a copy of the petition and that he appeared in court on the day the order was imposed. She said a unique "spin number" was assigned to each person who appeared in criminal court and that the spin number in the records about which she testified were identical to the Defendant's spin number.

Chattanooga Police Department Officer Chris Beavers testified that he was on patrol on the night of February 11, 2006. He said he saw the Defendant ahead of him in a cream Lincoln Continental, although he thought they were both stopped at a light when he saw the Defendant. He said the Defendant was not wearing a seat belt. He said that he turned on his lights but not his siren and that the Defendant turned left and then turned right into a gas station. He did not recall whether the Defendant's car windows were up. He said that the Defendant got out of the Lincoln, that he told the Defendant to get back into the car, and that the Defendant ignored the instructions and continued "to just mill about." He said that he asked the Defendant for identification and that the Defendant either said he did not have any or ignored him. He said he told the Defendant to put his hands on the car for a weapons pat-down. He recalled that he began the pat-down, that he informed the Defendant he was detaining him until the Defendant's identity could be determined, and that the Defendant fought and resisted as he attempted to handcuff the Defendant. He said that they struggled and that he used his Taser on the Defendant. He said the Defendant was able to break away and fled on foot.

Officer Beavers testified that he returned to his car and followed the Defendant, who was running in the middle of the street. He said he used his "P.A." system and instructed the Defendant to get on the ground and that he was under arrest. He said the Defendant kept running. He said he continued to follow the Defendant, who "jump[ed] between . . . two streets" at a Y intersection. He said he followed the Defendant for about 500 yards. He said that when backup officers arrived, he approached the Defendant on foot. He said he attempted to pepper spray the Defendant, who would not comply with his verbal instructions to get on the ground. He said he and another couple of officers chased the Defendant and tackled him. He said the Defendant flailed and kicked and that he had to use force to get the Defendant handcuffed and into a police car.

Officer Beavers testified that he remembered finding an open container of alcohol in the car the Defendant was driving and that the Defendant smelled of alcohol. He said he thought the container was a brown bottle of beer but could not remember definitively. He said that he transported the Defendant to jail and that the Defendant continued to struggle with him and other officers. He said a marijuana "roach" was found in one of the Defendant's pockets at the jail.

Officer Beavers testified that at the scene or the jail another officer recognized the Defendant and told him the Defendant's name. He said he determined after a driver's license check that the Defendant was a habitual motor vehicle offender. He said he was able to confirm the Defendant's identity with a "mug shot" on the jail's computer system. He said he was also able to determine the Defendant's Social Security number. He said that he thought the car the Defendant was driving and its license tag were not registered to the Defendant.

Officer Beavers acknowledged on cross-examination that there was no video recording of his encounter with the Defendant because the camera in his car malfunctioned. He also acknowledged that he did not remember some of the specifics because it had been two and one-half years ago. He said he did not think he ever lost sight of the Defendant during the chase.

Tennessee Bureau of Investigation Special Agent Robert Mark Young testified as an expert in forensic drug chemistry. He examined a partial hand-rolled cigarette submitted in conjunction with the Defendant's case and determined that it contained 0.2 grams of marijuana.

Chattanooga Police Department Officer Chris Beavers was recalled by the State and testified that he turned the marijuana cigarette confiscated from the Defendant in to the police custody room. He said he later submitted it to the TBI lab for testing. He acknowledged that he did not personally confiscate the cigarette but that he received it from a corrections officer.

Hamilton County Sheriff's Deputy Kelvin Pell testified that he was employed at the jail and was involved with the intake of the Defendant for the present charges. He said each individual who is admitted to the jail is given a unique identification number, called a "spin number." He said they would also be photographed and fingerprinted each time they were processed. He said that any information shown on a person's arrest report of a driver's license number, birth date, and Social Security number would be used to search the NCIC database and the local database for matches. He said that if a match is obtained, jail authorities would be able to retrieve a picture to verify the person's identity. He said the jail

records existed for the past fifteen years. He said that prior jail records contained a mug shot depicting the Defendant. He said the records associated with this mug shot also contained a driver's license number that was the same as the driver's license number as listed on the order declaring the Defendant a habitual motor vehicle offender. In addition, he said that when the Defendant first arrived, he recognized the Defendant on sight and informed Officer Beavers of the Defendant's identity.

Deputy Pell testified that he and his supervisor searched the Defendant and found a marijuana cigarette in the Defendant's pocket. He said he gave the cigarette to Officer Beavers.

Chattanooga Police Department Officer Dewayne Prater testified that he was working patrol on February 11, 2006. He said he heard Officer Beavers requesting assistance by radio and went to the scene. He said that when he arrived, the Defendant was in a residential yard and that Officer Beavers was giving the Defendant instructions to get on the ground. He said that he ran to the Defendant and tackled him. He said the Defendant struggled with the officers as they handcuffed him. He identified the Defendant as the person involved in the incident.

The defense did not present any proof. The jury found the Defendant guilty of violation of the motor vehicle habitual offenders act, possession of marijuana, evading arrest, violation of the seatbelt law, and violation of the open container law.

**I**

The Defendant's first issue challenges the sufficiency of the evidence for the conviction of violation of the habitual motor vehicle offenders act. The State argues that the proof supports the conviction. We agree with the State.

In reviewing the sufficiency of the convicting evidence, our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This means we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The Defendant argues that the State's proof of the Defendant's identity was lacking because (1) Officer Beavers used qualifiers such as "I believe," "If I'm not mistaken," and "If I remember correctly," throughout his testimony and was unsure of some of the details

of the arrest, and (2) Ms. Elston admitted that computer entries in the clerk's office were sometimes incorrect. In the light most favorable to the State, the evidence shows that although Officer Beavers did not recollect all of the details about his encounter with the Defendant, he did not express equivocation about the Defendant's identity. Additionally, Deputy Pell recognized the Defendant on sight and was able to link him to a mug shot and other identifying information in the jail records. He also testified that the identifying information in the Defendant's jail records matched the clerk's records for the Defendant's habitual motor vehicle offender order. Ms. Elston testified that human error was possible, but no evidence indicated any human error or misidentification of the Defendant in this case. From the evidence, a rational trier of fact could find beyond a reasonable doubt that the Defendant was the same person who was driving and later arrested and who was subject to a habitual motor vehicle offender order. The Defendant is not entitled to relief.

## II

The Defendant's second issue is that the trial court erred in allowing proof that the Defendant was recognized by an officer and that the Defendant had been photographed related to prior arrests. He contends the prejudicial value of this evidence substantially outweighed its probative value. The State disagrees that this was error and notes that the trial court gave appropriate limiting instructions. We agree with the State.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403. Prejudicial evidence is not excluded as a matter of law. State v. Carruthers, 35 S.W.3d 516, 577 (Tenn. 2000) (citing State v. Gentry, 881 S.W.2d 1, 6 (Tenn. Crim. App. 1993)). The term "undue prejudice" has been defined as "'[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978) (quoting Fed. R. Evid. 403, Advisory Comm'n Notes).

The standard of appellate review is abuse of discretion when the decision of the trial judge concerns the admissibility of evidence based on relevance. See State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997). The trial court's decision to admit or exclude evidence will be overturned on appeal only when there is an abuse of that discretion. Otis v. Cambridge Mut. Fire Ins. Co., 850 S.W.2d 439, 442 (Tenn. 1992). An abuse of discretion occurs when the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997).

In the present case, the trial court admitted the evidence in dispute as probative of the identity of the Defendant as the person who drove the car and who was subject to a habitual motor vehicle offender order. "The identity of the perpetrator is an essential element of any crime." State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006). The only remaining question, then, is whether the evidence was unduly prejudicial to the Defendant.

The record reflects that following the Defendant's objections, the trial court admonished the jury that the evidence in question was to be considered only for purposes of determining the issue of identity. There was proof that the Defendant was subject to a habitual traffic offender order, and it is logical that a person with an order of this nature against him would have previously generated records in the jail's computer system and might be recognized by an officer who had dealt with him previously. There was no evidence of arrests or convictions related to other crimes. We conclude that the probative value of the identity evidence is not outweighed by the danger of its prejudicial effect. The trial court did not abuse its discretion in admitting it for the limited purpose of proving the Defendant's identity as the person who drove while subject to a habitual motor vehicle offender order.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

---

JOSEPH M. TIPTON, PRESIDING JUDGE